ALONZO MEAD, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Larceny:** DEFINITION. Simple larceny is the felonious taking and carrying away of the personal goods of another, with intent to deprive the owner, permanently, of his property. The taking must be with a felonious intent, otherwise there is no larceny. If A should take the property of B, believing that it was with B's consent, and that the property belonged to A, there could be no larceny, because no criminal intent.

2. ——: EVIDENCE examined, *And Held*, Not sufficient to sustain a verdict of guilty of larceny.

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*A. H. Bowen,* for plaintiff in error, cited: *Thompson v. The People,* 4 Neb., 528.

*Wm. Leese, Attorney General,* for defendant in error, cited: *Rex v. Gilbert,* 1 Moody Crown Cases, 185. *Com. v. Wilde,* 5 Gray (Mass.), 83. *Ainsworth v. State,* 11 Tex. Ct. of App., 339. *Reg. v. Slowly & Humphrey,* 12 Cox C. C., 269. Wharton Crim. Law, Sec. 947 (9th Ed.)

REESE, CH. J.

At the June term, 1887, of the district court of Adams county, the county attorney of said county filed an infor-

mation, charging plaintiff in error with stealing a mule, on the 18th day of the same month, from A. C. Lindquist.

Upon arraignment, plaintiff in error pleaded not guilty, and on the 24th day of June a trial was had, which resulted in a verdict of guilty, and on the same day he was sentenced to confinement in the penitentiary for the term of four years. He brings the cause to this court by proceedings in error, alleging that the verdict of the jury was not sustained by sufficient evidence; that it was contrary to law; and that the court erred in overruling a motion for a new trial.

The principal contention of plaintiff in error is, that the verdict of the jury was not sustained by sufficient evidence.

The testimony introduced on the part of the state shows that Lindquist was the owner of the mule in question, on the day of the alleged larceny, when he was approached by plaintiff in error, suggesting a trade. He declined to trade the mule for other property, saying that there was a chattel mortgage on it, and he wanted to sell it. Plaintiff in error then proposed buying it, if Lindquist would wait a short time, saying that one Lee had a mate for a horse which he had and would buy him, but that he and Lee were not friendly, and Lee would not buy directly from him. Soon after that, Lee came to the barn and offered plaintiff in error $90 for the horse, but no sale was made, and Lee went away. Plaintiff in error then asked Lindquist to take the horse and go to where Lee was and get the $90, which Lindquist refused to do, saying that he was a stranger. He finally went and saw Lee, when Lee told him to return to the stable and he would be there in a few minutes and pay the price demanded. Lindquist then returned to the stable and informed plaintiff in error what had transpired. Plaintiff in error began to remove the saddle from the mule, when Lindquist informed him that the saddle must not be removed until he got his money.

Plaintiff in error then left the barn, when Lee soon after came in, saying he would have the money in a few minutes, and for Lindquist to take the horse out of the barn and hitch him to a post by the bank, which Lindquist did. It is shown that the mule was soon afterwards removed from its place in the barn and tied beside plaintiff's remaining horse. The buggy or carriage in which plaintiff had driven to Juniata that morning had been removed to the rear of the barn, by the owner of the barn. Plaintiff in error soon afterward returned, hitched his horse and the mule to his buggy, and departed. He was soon afterward followed and arrested for the larceny.

Upon the trial he testified, in his own behalf, that he did not know of the removal of the horse, nor of the substitution of the mule in its place in the barn, until he returned, and finding them so situated he supposed the exchange had been made by Lindquist, and without stopping to inquire further he hitched up and left.

There is considerable in the evidence which savors very strongly of dishonesty on the part of plaintiff in error, but as to whether he intended to steal the mule, is a question upon which we will express no opinion.

Upon the trial the court gave to the jury but one instruction, which was as follows:

"If you find from the evidence in the case the defendant took, stole, and carried away, or drove off the mule of the person to whom it is alleged in the information the same belonged, in Adams county, Nebraska, on or about the time alleged, with the intent to permanently deprive the owner thereof of his property, you will render a verdict of guilty. Bearing in mind, if you entertain a well grounded, reasonable doubt as to the guilt of the defendant, you will find him not guilty."

No exception appears to have been taken to this instruction, and it cannot be considered, except in so far as it may aid in the investigation of the question in hand.

It will be seen that no direction or information was given the jury as to what the crime of larceny consisted, except that, if the property was taken with the intention of permanently depriving the owner of it, the verdict should be guilty. It is true the words "took, stole, and carried away," occur in the instruction, but there is nothing in the instruction which told the jury that the taking must be with felonious intent. *Thompson v. People,* 4 Neb., 524.

A number of questions naturally arise in a case of this kind upon which a trial jury should be instructed, viz., as to what constitutes the crime of larceny; the difference between larceny and obtaining property by false pretense; the felonious intent of plaintiff in error, or the want of it, at the time the property was taken. That if the jury found that, upon his return to the barn, he found the mule standing with his remaining horse, in the place of the one which had been removed by Lindquist, and actually believed that Lindquist had made the exchange in his absence, that fact could be considered for the purpose of arriving at his intent, whether criminal or otherwise. There is no doubt but that he took the property alleged to have been stolen. It is quite probable that he took the mule with the intention of permanently depriving the former owner of the property, yet this would not necessarily constitute the crime of larceny. The testimony is very unsatisfactory upon these questions. It is clear enough that the title to the property did not pass from Lindquist to plaintiff in error, and that he had no legal right to remove the property; but its removal under such circumstances would not necessarily constitute the crime of larceny. There must have been the criminal intent. The taking and carrying away must have been feloniously done, with the purpose of depriving the owner permanently of his property. That is, the taker must have known that the property was not his own; that it belonged to another;

that he had no legal right to take it, and the taking must have been with the intent to steal it—a felonious taking. Maxwell's Criminal Procedure, 360. Suppose plaintiff in error actually believed that his horse had been removed by Lindquist (which was true), and that the mule had been placed beside the remaining horse as a delivery to him, there could have been no larceny, whatever the real fact may have been. There is no competent proof that Lee and plaintiff in error were conspiring to deprive Lindquist of his property unlawfully. Although their conduct might have been somewhat suspicious, yet this question was not submitted to the jury, and they could not consider it. Upon the whole case, we think there was not sufficient to warrant a verdict of guilty, and a new trial should have been awarded.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.