Ford v. State.

PATRICK FORD, JR., v. STATE OF NEBRASKA.

FILED NOVEMBER 19, 1895.   No. 7091.

1. **Jury:** RULINGS ON CHALLENGES: MOTION FOR NEW TRIAL:
   REVIEW.   Alleged errors in overruling challenges to jurors for
   cause will not be reviewed by the appellate court where they
   were not called to the attention of the trial court in the motion
   for a new trial.

2. **Trial:** OBJECTIONS TO EVIDENCE: WAIVER.   Where objection
   to the materiality or relevancy of testimony is not made when
   offered, and before it has gone to the jury, ordinarily it should
   be deemed waived.

3. ———: EXCLUSION OF EVIDENCE: HARMLESS ERROR.  It is not
   reversible error to exclude testimony, where the fact attempted
   to be proved has been fully established by uncontradicted evi-
   dence.

4. ———: ———: REVIEW.   Where a question is asked a witness
   on the examination in chief, to which objection is made, and
   sustained by the court, in order to obtain a review of the ruling
   the party desiring the evidence must offer to prove the facts
   sought to be elicited by the question.

5. **Review:** TRANSCRIPT.   The transcript of the record filed in this
   court imports absolute verity.   If incorrect, or it fails to speak
   the truth, the correction must be made in the trial court and not
   in this court.

6. **Criminal Law:** INSTRUCTION AND ARGUMENT AS TO PEN-
   ALTY.   Where the jury are not required to fix the punishment
   in a criminal prosecution, it is not error for the trial judge to
   refuse to instruct them as to the penalty prescribed by statute
   for the offense, or to permit that question to be argued to the
   jury.

7. **Larceny:** INSTRUCTIONS.   In a prosecution for larceny as bailee,
   an instruction which fails to charge that the original taking of
   the property must be felonious is not for that reason erroneous.
   The gist of the offense in such a prosecution is the conversion of
   the property without the knowledge and consent of the owner
   thereof with the intent to steal the same.

8. ———: ———.   *Held,* That the charge of the court, to the effect
   that every sane person is presumed to intend the natural and

probable consequences of his voluntary acts, was not only abstractly correct, but was applicable to the case made by the evidence.

9. **Intoxication as Defense:** INSTRUCTIONS. *Held,* That the sixth instruction correctly stated the rule relating to the defense of intoxication.

10. **Instructions.** It is a well settled rule that instructions should be construed together, and if, when considered as a whole, they properly state the law, it is sufficient.

11. ———: REVIEW. The supreme court will not reverse a case for the refusing of an instruction, where the substance thereof has been given in other instructions.

12. **Larceny:** EVIDENCE. Evidence examined, and *held* sufficient to sustain a conviction of larceny as bailee.

ERROR to the district court for Douglas county. Tried below before SCOTT, J.

*Mahoney, Minahan & Smyth,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state.

NORVAL, C. J.

The plaintiff in error stands convicted of the offense of larceny, as bailee, of a diamond ring of a value of more than $35, the property of one Catlin. The material and undisputed facts in the case, as disclosed by the bill of exceptions, are substantially as follows: Patrick Ford, Jr., the plaintiff in error, resided in the city of Fremont. A short time prior to the 7th day of March, 1894, he applied to the superintendent of the Fremont, Elkhorn & Missouri Valley Railroad Company for the position of brakeman on that road, and was informed that in the near future he would be given work. After waiting a few days he made a visit to his parents' home, in the city of Omaha, and while there, on the morning of the date above stated, he received word, to the effect, that if he returned to Fre-

mont he could secure the promised position as brakeman. He replied that he would be there in the morning. During the day of March 7 he drank intoxicating liquors, and by night he was somewhat under their influence. He continued to drink intoxicants until about 11 o'clock in the evening, when he entered the saloon of Wright & Coleman on South Twelfth street, where he met Charles Catlin, an old acquaintance, and the prosecuting witness. Ford invited Catlin and others to drink with him, which they did. Catlin was wearing a diamond ring of the value of $55, which Ford saw, and the latter said, "That's a nice ring. Let's see it. Take it off." Catlin removed the ring, handed it to Ford, who put it on his finger and displayed it to those present. Afterwards Ford suggested that they visit Pat Horrigan's saloon, located at Twelfth and Davenport, and as they started, Catlin asked for the ring. Ford replied, " I will let you have it in a few minutes. I want to go up there and flash it." Upon reaching Horrigan's they drank together two or three times, and then they went to Martin Shields' saloon, which was just closing, and they passed by, stopping at Ella Mitchell's for a short time. From there they returned to Horrigan's, and, after taking several drinks, they went back to Ella Mitchell's. Both went into the house together, and after they had been there a few minutes, Ford went out of the back door, saying that he was going to the water closet. He failed to return, and Catlin did not see him again. About 8 o'clock in the morning of March 8, Ford, under the assumed name of Meyers, went to the pawn shop of H. Friedman, borrowed $10 of him and pawned therefor Mr. Catlin's ring. Mr. Ford signed the pawnbroker's book "Jim Meyers, 1024 Davenport street." In the forenoon of the same day Ford went to Fremont, but claims he has no recollection of what he had done until he awoke about noon, when he found himself in Gannon's grocery store in Fremont. At this time Mr. Gannon, with whom he was

acquainted, gave Ford a cigar, and the latter, on putting his hand in is pocket to procure a match with which to light the cigar, discovered the pawn ticket which he had received for the ring. Within a brief period he wrote a letter to Catlin, informing him what he had done with the ring and inclosing therein the pawn ticket, which Catlin received the same day. Ford went to work for the railroad company, and two or three weeks later he was arrested for stealing the ring.

The first complaint made in the brief relates to the overruling of the prisoner's challenge for cause of juror Coombs. The ruling just referred to cannot be reviewed, since the attention of the trial court was not challenged to the same by the motion for a new trial. It is too firmly settled in this state to require the citation of authorities in support thereof that allegations of error will be disregarded, upon a review of a cause in this court by petition in error, where they are not pointed out in the motion for a new trial.

Upon the trial one John Wright was called and examined as a witness on behalf of the state. On his direct examination he was asked by the county attorney this question: "You may state whether or not that ring which you hold on your hand, which is marked 'Exhibit 1' in this case, is the ring which you saw on the hand of Pat Ford the evening of March 7, to the best of your knowledge." The witness answered, "It is, to the best of my knowledge;" whereupon the defendant moved to strike the answer as immaterial and incompetent, which was overruled, and an exception was entered. This ruling is presented for review by the second assignment of error. The answer responded to the question. If it was incompetent or immaterial to the issues, an objection should have been made on that ground when the interrogatory was put to the witness. It is too late to raise such objections, after the answer of the witness had been taken, without objection.

(*Palmer v. Witcherly*, 15 Neb., 98; *Oberfelder v. Kava-naugh*, 29 Neb., 427; *Western Home Ins. Co. v. Richardson*, 40 Neb., 1.) In no event, even though this evidence was incompetent, could a reversal be had for that reason, since it was conclusively established by other uncontradicted testimony that Exhibit 1 was the identical ring which Mr. Catlin owned and which he let the prisoner have. Moreover, we are satisfied that the testimony of Mr. Wright, to which objection was made, was admissible. True, the witness testified concerning the identity of the ring to the best of his knowledge. It was only from his knowledge of the matter that he could speak. If the defendant had desired to ascertain the witness' means of information of the matter he should have interrogated him in regard thereto.

The third, fourth, fifth, seventh, and eighth assignments of error are not well taken. They are based upon the refusal of the trial court to permit certain witnesses to answer questions framed for the purpose of eliciting the condition of the defendant as to his being under the influence of liquors on March 7. It had already been shown that the defendant was drinking heavily, where, how often, and the kind of liquors he drank, and the effect they had upon him. There was no dispute among the witnesses upon that point, and had the testimony excluded been received, it only would have been cumulative in its nature.

By the ninth assignment is presented the ruling of the court in sustaining the objection of the state to the question asked the accused as to whether or not he had any sleep between the time he left Mitchell's place and the time he reached Fremont. The decision of court upon this point cannot be reviewed, since no offer was made in the court below to prove the fact sought to be elicited by the interrogatory. (*Kearney County v. Kent*, 5 Neb., 227; *Masters v. Marsh*, 19 Neb., 458; *Mathews v. State*, 19 Neb., 330; *Lipscomb v. Lyon*, 19 Neb., 511; *Connelly v. Edgerton*, 22 Neb., 82; *Burns v. City of Fairmont*, 28 Neb., 866.)

Two assignments, the tenth and eleventh, relate to the remarks of the trial judge during the argument of the cause to the jury.  In support of the charge of misconduct imputed to the judge were read the affidavits of the accused, his attorney, C. J. Smyth, W. S. Shoemaker, Lee Herdman, and Oscar J. Pichard.  Opposing these are the affidavits of Mr. Slabaugh, the deputy county attorney, and Mr. Henderson, the court stenographer.  The record also contains the statement of the presiding judge, of what was said and done.  It is not important that we stop and consider whether the language used by the court was prejudicial or not, since the record fails to disclose that the attorney for the accused excepted thereto at the time, but shows whatever exception was made was only to a remark confessedly unprejudicial.  It should be stated that so far as the affidavits are concerned those filed on behalf of the prisoner show a proper exception was taken, while the counter-affidavits show such was not the fact.  Whether a party excepts to a ruling, or to the conduct of the trial judge, must be determined alone from the record; an issue of fact cannot be made thereon in this court.  The transcript imports absolute verity, and cannot be impeached.  If incorrect, or if it fails to speak the truth, the correction must be made in the district court and not here.  (*Weander v. Johnson*, 42 Neb., 117.)  The record failing to disclose any exception to the remarks of the trial judge, of which complaint is here made, the same cannot be reviewed.

What has been said disposes of the thirteenth assignment of error, which is that the court erred in not informing the defendant of the verdict of the jury, and in not asking him whether he had anything to say why sentence should not be pronounced against him.  Unfortunately for the accused this assignment is not supported by the record.  The journal entry in the case, a certified copy of which is before us, affirmatively shows that the prisoner, on being arraigned for sentence and judgment, was informed of the verdict

and of the penalty provided by law for the crime of which he had been found guilty, and was asked by the court if he had anything to say why sentence of the court should not then be pronounced against him, and the defendant replied he had nothing to say. It is contended that the record is incorrect, and the journal entry is sought to be impeached by the affidavits. This, as we have seen, when considering the previous assignment, cannot be done in that mode in this court.

It is insisted that prejudicial error was committed in the failure of the trial judge to inform the jury of the statutory penalty attaching to the offense charged, and denying to counsel for the prisoner permission to comment on the penalty before the jury. It is obvious that both contentions must stand or fall together. If it was the duty of the court to instruct the jury what the penalty was, then it was a fair subject of discussion before the jury, otherwise it was not. Two cases are cited by counsel for the accused to support the propositions advanced, viz., *People v. Cassiano,* 30 Hun [N. Y.], 388, and *Collins v. State,* 5 Tex. App., 38. The last case was decided in a state having a statute which makes it the duty of the jury, in a criminal prosecution, when the prisoner is found guilty, to assess the punishment, in all cases where the same is not absolutely fixed by law, to some particular penalty. (Texas Criminal Code, sec. 626.) We can readily see, under such legislative enactment, that the court should inform the jury of the penalty imposed by law for the offense charged. It would be part of the case. Without being so instructed, the jury could not intelligently and properly determine the punishment. But we have no such law in this state as obtains in Texas, except in capital cases, hence the decision in *Collins v. State* cannot be regarded as a precedent to be followed here. The case decided by the New York court, already cited, sustains the contention of counsel for plaintiff in error; but it is not a well considered opinion, nor is any authority cited in that

state, or elsewhere, to support the doctrine. The judge who prepared the opinion disposes of the question in the following brief language: "We think the information should have been given. In all cases the jury should know the effect of their verdict. While it is proper to instruct them that, when a crime is proven, the extent of the punishment therefor is no sufficient reason why a verdict according to the facts found should not be rendered, yet, as a part of the case, the punishment should be known by the jury." In states where the courts, and not the jury, impose the punishment, the effect or consequences of a verdict of guilty in a criminal case does not concern the jury. They have no right to convict an innocent person because the statutory punishment is light, nor can they acquit one proven guilty of a crime merely because the punishment for the offense prescribed by the law is severe. It follows that where the jury have nothing to do with the punishment prescribed by law for the offense, it is not error for the court to fail to inform them of the statutory penalty. It is discretionary with the trial judge whether he do so or not. Mr. Bishop, in his work on Criminal Procedure (vol. 1, sec. 480), lays down the rule, in effect, that if the punishment is for the court, it need not instruct them as to the penalty, but otherwise if the jury fixes the punishment. (See *Russell v. State*, 57 Ga., 420.)

The next assignment of error is predicated upon the fourth paragraph of the instructions, which reads thus: "If you find from the evidence, beyond a reasonable doubt, that defendant obtained the ring in question temporarily from said Charles Catlin, and that he afterwards, without the knowledge or consent of said Charles Catlin, unlawfully disposed of said ring at a pawn-shop and received money thereon, such an act on the part of the defendant would be a conversion of the property in question to defendant's own use; and if you find, beyond a reasonable doubt, that defendant unlawfully converted said

ring to his own use by disposing of the same at a pawn-shop, and received money thereon, with intent to steal the same, then defendant would be guilty of larceny of said ring the same as if he had originally feloniously stolen said property from the said Charles Catlin at the time he obtained possession thereof from said Charles Catlin if he did obtain it."

It is argued that this instruction is fatally defective, in that it omitted the element of "felonious taking," and *Mead v. State*, 25 Neb., 444, and *Barnes v. State*, 40 Neb., 545, are cited to support the proposition. Those cases are clearly distinguishable from the one at bar. They were prosecutions for simple larceny, while this is for larceny as bailee. In the decisions referred to the original taking must have been felonious in order to constitute the offense charged, while such is not the case in a prosecution like this. Here the gist of the offense is not the felonious taking of the ring, but the conversion thereof by Ford without the knowledge and consent of the owner, with the intent to steal it. The statute under which the information in this case was filed, section 121*b* of the Criminal Code, declares "That if any bailee of any money, bank bill, or note, goods, or chattels shall convert the same to his or her own use, with an intent to steal the same, he shall be deemed guilty of larceny, in the same manner as if the original taking had been felonious." The instruction includes every element of the offense described in the statute.

It is insisted that the instruction is defective for the reason that the word "same" in the sentence, "pawned the ring and received money thereon with intent to steal the same," refers to the word "money" and not to the word "ring." This criticism is without merit. The word "same" refers to "ring," and the jury must have so understood. This is made clear by the portion of the instruction following the sentence quoted above. The jury could not have inferred from the language employed in the in-

Ford v. State.

struction that they should find the defendant guilty if the evidence showed that he obtained money on the ring with the intent to steal the money. The instruction was not misleading or uncertain.

The foregoing remarks dispose of all the objections urged against the fifth instruction, excepting the one directed to the opening sentence of the instruction, which reads: "Every sane person old enough to be accountable for his acts is presumed to intend to do that which he does do, and is presumed to intend the natural and probable consequences of his voluntary acts, and such presumption becomes conclusive in the absence of evidence to the contrary." It is not contended that this portion of the charge was abstractly incorrect, but it is urged that it was not applicable to the case. In other words, that a specific intent to steal had to be proved,—that is, an intent distinct and separate from the acts done,—and that the rule laid down by the court appertains only where a general intent is sufficient, and not where a specific intent must be shown. It is true the intent to steal the ring had to be proven, but the fact, like any other, could be established by the facts and circumstances detailed by the witnesses. Doubtless, where one who has the lawful possession of the property of another converts the same to his own use, the intent to convert alone might be inferred from the acts, rather than the intent to steal; but whether such inference shall be drawn depends upon the facts of each particular case. The mere proving of the conversion alone, not coupled with any criminating circumstance, would be insufficient to establish the intent to steal. The jury could not have understood by the instruction that from the fact of the conversion of the ring they were bound to find that the defendant had a specific intent to steal the same. The instruction, as an entirety, left to the jury to determine the question of intent with which the act was committed from a consideration of all the evidence adduced. The objection to the instruction is overruled.

The next assignment is based upon the sixth instruction, which reads: "The defendant claims that at the time he disposed of the ring in question he was so under the influence of liquor that he was incapable of forming an intent to steal, and for that reason he claims he is not guilty. Drunkenness is no excuse for crime. If the state has proved, beyond a reasonable doubt, that defendant, at and within the county of Douglas and state of Nebraska, at or about the time named in the information, temporarily obtained the property in question from the said Charles Catlin; that while holding the possession of the property he unlawfully and feloniously converted said property to his own use, without the consent of the said Charles Catlin, by disposing of said property at a pawn-shop, with the intent feloniously to permanently appropriate the same to his own use, against the will of said Charles Catlin, then the burden would rest upon the defendant to satisfy you by evidence that he was so under the influence of liquor at the time that he was mentally unable to form an intent in his mind to steal said property, or raise a reasonable doubt in your minds, after careful weighing and consideration of all the evidence in the case, whether he is guilty, because of such a state of intoxication at the time as not to be able to form an intent to steal. You are to determine this matter from all the evidence in the case." Objection is made to the sentence, "Drunkenness is no excuse for crime." The soundness of this statement cannot be successfully controverted. (3 Rice, Criminal Evidence, sec. 387; Hoyt v. Utah, 104 U. S., 631; Hill v. State, 42 Neb., 503.) Drunkenness was urged as a defense, and the fact that the court informed the jury that it was no excuse for crime, in no manner tended to belittle the prisoner's defense, as in the brief suggested.

It is strenuously insisted that the sixth paragraph of the charge cast the burden upon the defendant below to show that he was intoxicated when he converted the ring to such

an extent that he was unable to form an intent to steal the property. The instruction is not susceptible of such interpretation. If the defendant succeeded in showing that he was incapacitated at the time, by reason of drunkenness, to form an intent to steal, or if he raised a reasonable doubt in the minds of the jury upon that point, he was entitled to an acquittal. While the language used in the instruction might have been more concisely as well as clearly expressed, yet we are unable to see how it could have misled the jury. It was only necessary that the evidence raise a reasonable doubt of the prisoner's ability to form an intent to steal, to make the defense available, and this idea is sufficiently expressed in the instruction. It did not require that the defendant satisfy the jury of this defense, either by a preponderance of the evidence or beyond a reasonable doubt. If the evidence raised a reasonable doubt as to his ability to form an intent, it was sufficient.

Complaint is made of the eighth instruction, which is in the following language: "If you find the defendant guilty you will determine in your verdict, under the evidence and these instructions, the value of the property, or what it was worth in the market." By this instruction the jury were told to fix the value of the ring in case a verdict of guilty was returned at what it would bring, or was worth, in the market. This, doubtless, was the correct rule. It is true the instruction does not state whether the value was to be determined by a preponderance of the evidence, or beyond a reasonable doubt; but this point was covered by the second instruction, by which the jury were told that the burden was upon the state to establish beyond a reasonable doubt each material averment in the information. The jury, therefore, were fully informed by the court that the value of the property must be established beyond a reasonable doubt. Instructions must be construed together, and if, when considered as a whole, they properly state the law, it is sufficient. (*St. Louis v. State*, 8 Neb., 406; *Mur-*

30

*phy v. State*, 15 Neb., 383.)    Applying this rule to the case
at bar, we are convinced the prisoner's theory of defense
was fairly submitted to the jury, and no prejudicial error
was committed in refusing the instructions asked by him.
The points upon which instructions were asked were fully
covered by those given by the court upon its own motion,
and it was not error to refuse to repeat them. (*Olive v. State*,
11 Neb., 1.)

It is finally insisted that the verdict was not sustained by
the evidence.    That the defendant converted the ring to
his own use is undisputed, and the careful perusal of the
evidence discloses that it was sufficient to warrant the jury
in finding that the conversion was felonious and with the
intent to steal, and that the accused was sufficiently sober
at the time he pawned the property to form such an intent.
The judgment is

AFFIRMED.