JOHN FRADES v. STATE OF NEBRASKA.

FILED DECEMBER 18, 1936. No. 29873.

*J. L. Richards,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Edwin Vail, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

GOSS, C. J.

Defendant was convicted on a charge of stealing a bull of which he was bailee. The jury valued the bull at $56. The sentence was for one year in the penitentiary.

The offense of larceny by bailee is defined in section 28-547, Comp. St. 1929. The sentence is fixed by the general statute on larceny, section 28-511, Comp. St. 1929. "The gist of the offense in such a prosecution (for larceny as bailee) is the conversion of the property without the knowledge and consent of the owner thereof with the intent to steal the same." *Ford v. State,* 46 Neb. 390, 64 N. W. 1082.

The brief of plaintiff in error, hereinafter called defendant or Frades, is occupied largely with the point that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that the court therefore erred in denying defendant a dismissal.

Arthur C. Woodman, the prosecuting witness, testified that late in September or early in October, 1933, the defendant and Amos Kohl came to the farm of the witness in a car to which was attached a trailer. Defendant wanted to borrow a bull for breeding purposes. Witness made a practice of loaning cows for their keep. He had a young red roan bull and testified that he let Frades take him to keep until Woodman wanted him, with the under-

standing that the bull might be loaned but was not to be overbred. The bull had been branded and had been dehorned with clippers when he was a calf. His horns had grown a little and the knobs had begun to curl down. The end of the right ear had been cut off and a slit made in it. In August, 1934, the bull was about a year and a half old and weighed about 650 pounds. Frades bought some hogs of Woodman in August, 1934, and Woodman asked him whether the bull had made much of a growth and Frades said he had. About September 15, 1935, Woodman went to Frades' home and asked him if he had the bull he had borrowed and Frades said he had never borrowed any bull from Woodman. Woodman testified he asked Frades how he could look him in the eye and say that and then Frades said the bull had died the spring before. (There was conversation when Frades first got the bull that if the bull died Woodman would not hold Frades for the loss.)

Frades testified that when Woodman had the conversation with him in September, 1935, he merely said he was looking for a red roan bull and when Frades asked him to whom he had loaned it "he said, he didn't know, he forgot."

Amos Kohl testified that he took his car and defendant's trailer and accompanied defendant to Woodman's place about October 1, 1933; that defendant asked Woodman for a bull and when shown the red roan bull said "Just what I want." The witness got permission from Woodman to breed the bull to four of his cows because he was hauling the bull away. They took the bull in the trailer to Frades' place. About a month later the witness got the bull, kept him a few weeks, and Frades took him away.

Pete Aksamit testified that early in 1934 he was riding with defendant past the latter's stock field and asked defendant where he got that roan bull over there and defendant told him he got it from Mr. Woodman.

The testimony of Woodman, Kohl and Aksamit was sufficient basis for the finding of the jury that the bull was delivered to defendant and that there was a bailment.

When defendant told Woodman he had never borrowed any bull from him, Woodman further prosecuted his search for the bull. There was evidence indicating that the bull had been loaned out by Frades to various parties. It will serve no good purpose to detail all of it.

May Cradduck, a cousin of Woodman who had her home with him and his father and mother, testified that she was at home when defendant and Kohl got the bull and she saw them take him away. She knew the bull. On September 15, 1935, she saw the bull at John Bandemer's place and recognized it from its horns and the cut and slit in its ear. Ross Burch testified that he got the bull in June, 1935, and turned it over to John Bandemer the first week in August. John Bandemer testified that he got the bull, kept it about six weeks and took it to defendant. Orville Cook testified that on September 16, 1935, he and Frades bought a cow together. About noon of that day he and defendant had the bull loaded on a truck at Frades' place, went to Hebron and got the cow and took both animals to Carleton, where Cook sold both the cow and the bull for $109. Cook gave defendant all the money received from the bull and his share of the profits on the cow. The bull was promptly shipped by the purchaser to the Omaha market. There is no further testimony about him.

There is complaint that the bull sold in Carleton is not identified as the bull that was received by defendant from Woodman. Defendant argues that the state's case is weak because it did not follow the career of the bull further and show whether the hide was branded with the initials of Woodman, as he testified it was branded as a calf. Some of the witnesses testified that they did not see a brand; one at least testifying that the bull that was sold was not branded. Suffice it to say that there was sufficient evidence to go to the jury, from which it was for them to say whether the bull that was sold at Carleton was the bull that was the subject of the bailment alleged.

Defendant assigns error in instruction No. 4 in respect

of the first two material points necessary to be proved by the state beyond a reasonable doubt before a verdict of guilty can be reached. These read:

"1. That the defendant, John Frades, on or about the 16th day of September, 1935, was the bailee of certain personal property of Arthur C. Woodman, to-wit, one red roan bull;

"2. That while said property was held by the said defendant as said bailee, he the said defendant did convert said property to his own use with the intent to steal the same."

Of this instruction defendant says it does not, and that the instructions elsewhere do not anywhere, explain to the jury how long a bailment continues and the meaning of the term "convert to his own use." It is to be noted that the transcript does not show that defendant tendered any instructions. Further, any ambiguity in the instruction as to when the conversion occurred is covered by the first instruction, which was an abstract of the information and shows that the conversion was charged as of the 16th day of September, 1935. That was the day the bull was shown by the stated evidence to have been taken by Frades to market and sold.

"Whether an instruction is reversibly erroneous is not to be determined from its language alone, but from an examination and consideration of the whole charge. In other words, the instructions in a case should be considered together, not section by section or paragraph by paragraph." *Peterson v. State,* 115 Neb. 302, 212 N. W. 610.

"Where the trial court has instructed generally as to the issues of a criminal prosecution, error cannot be predicated on its failure to instruct as to a particular phase of the case, where no proper instruction has been requested by the party complaining." *Martin v. State,* 67 Neb. 36, 93 N. W. 161.

The third assignment of error states in an argument of six lines that instruction No. 9 leaves the jury to speculate

as to whether there might have been a conversion at some other time or place "than that which the state attempted to prove at Carleton on September 16, 1935." This is an admission of the date which was adopted by the state and is the date which, as we have shown before, was that clearly instructed by the court, as a reading of the entire instructions to the jury shows.

The court sustained an objection to the defense asking Woodman on cross-examination whether he made an effort to obtain its hide or to find the bull, the objection being that it was immaterial and not proper cross-examination; sustained an objection by the state to an offer of proof by defendant that the brand was a recorded brand, the offer being objected to as irrelevant and immaterial and not tending to prove or disprove any issue; and overruled the motion of defendant to strike the answer to the following question, asked the state's witness, Burch, as not responsive: "Q. During the time you had him did you notice any brand on him? A. I wouldn't swear whether it was a brand; I noticed a mark on him, so far as looking to see what this was, I never." The rulings do not appear to be prejudicially erroneous to defendant.

Defendant had a fair trial. While the evidence was disputed and conflicting on some points, the jury passed on such matters in the exercise of its fact-finding power. There is not found any prejudicial error in the record. The judgment is

AFFIRMED.