FRANK H. KUCERA, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.

102 N. W. 2d 635

Filed April 29, 1960.    No. 34772.

*Wagner & Wagner*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *John E. Wenstrand*, for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

Plaintiff in error, Frank H. Kucera, hereinafter called the defendant, was charged by a complaint filed in the justice court for Platte County, Nebraska, with operating a motor vehicle on or about June 21, 1959, on a highway outside of a city or village at a rate of speed exceeding 55 miles an hour between the hours of sunset and sunrise, to wit, at 72 miles an hour, contrary to law. The case was tried to a jury. The jury returned a verdict finding the defendant guilty as charged. The court assessed a fine in the amount of $31 and costs against the defendant. The defendant appealed to the district court. The case was tried in the district court to a jury. The jury returned a verdict finding the defendant guilty. The defendant filed a motion to vacate the verdict and

grant the defendant a rehearing, which motion was over-ruled by the trial court. The trial court assessed a fine of $35 and costs against the defendant. The defendant brings his case to this court by petition in error.

The record discloses that Claude Whitney, a sergeant connected with the Nebraska Safety Patrol, was on duty on the shift from approximately 4 p.m., June 20, to 2 a.m., June 21, 1959; that he was working traffic on U. S. Highway No. 30 in Platte and Colfax Counties; that he and trooper Earl Dughman had a radar speed-meter unit set up approximately 4 miles east of Columbus, just to the west of the Loup River Public Power Company canal, on the north shoulder of the highway facing southwest, between 25 and 40 feet west of a driveway immediately adjacent to the bridge, and used by the power company to service its canal; that the radar unit must be operated by at least two officers, one in charge of the radar meter and the other to operate a pursuit car; that the two officers in charge keep contact by two-way radio which allows the officers to talk to each other; and that Dughman operated the radar meter and Whitney was in charge of the pursuit car. The pursuit car was situated slightly to the east and generally to the north in the driveway to the Loup River Public Power Company canal, and back in the driveway a distance of approximately 50 yards. The officers in charge of the radar speed meter tested the meter by driving at a constant speed of 55 miles an hour east and west through the radar zone to ascertain if it was working properly, and it was.

Sergeant Whitney testified that he received a radio message from Dughman that a 1950 Chevrolet car traveling east had checked through the radar zone at 72 miles an hour; that at the time the defendant's car passed through the radar beam, this witness was parked facing the highway, looking to the south, and the area in front of him was under his observation; that he saw the car operated by the defendant pass through the immediate

area of the radar zone, and kept defendant's car within his vision during the time that Dughman radioed the message to him; and that the defendant's car did not leave his vision after he saw it passing the radar beam. He further testified that there were no other vehicles in the immediate area which passed through the radar beam at the same time the defendant's car passed through it; that no car followed the defendant's car through the radar beam; and that he followed and stopped the defendant's car, wrote a summons ticket for the defendant to appear in justice court in Platte County, and returned to his station.

On cross-examination this witness testified that he traveled a little over a mile to catch the defendant's car; and that the defendant did mention that a car had passed him between Columbus and the canal and the officer could probably overtake such car which was traveling east. This witness testified on redirect examination that he had no description of the car and would not have known what car to look for if he had pursued it.

Earl Dughman, a member of the Nebraska Safety Patrol and on duty at the same time as sergeant Whitney, that is, from 4 p.m., on June 20, until 2 a.m., on June 21, 1959, testified that he was in charge of the radar speed meter; that he was sitting in his patrol unit approximately 60 feet to the north of the radar unit which was facing in a southwesterly direction; and that his vision was not obscured to the west and was good for approximately three-quarters of a mile to the east. He further testified that about 1 a.m., on June 21, 1959, just before the defendant's car passed through the radar zone he was watching it travel down the highway; that the traffic was light; that the lights of the defendant's car were on; that he watched the car for some distance before it passed through the radar beam; and that he obtained a reading of 72 miles an hour from the radar meter at the time the defendant's car passed

through the radar beam. He further testified that he notified Whitney by radio, and Whitney acknowledged his communication; and that there was no other car passing from the east at the time the defendant's car passed through the radar beam.

On cross-examination this witness testified that when a car passed through the radar zone the speed of that vehicle would be registered at that time, and when that car passed out of the scope of the radar meter, if a second car was still within the scope of the radar meter the machine would register the speed of the second car passing through the radar zone; and that if the second car was going faster than the first car, and entered the radar zone while the first car was partly, or any distance, within the radar zone, the radar meter would read the first car until it got out of the scope of the radar zone, then the second car's speed would be registered by the radar machine.

On redirect examination this witness testified that when a car passes through the 170-foot radar beam, it is a fair statement to say that the radar meter will register the first car passing through until that car gets out of the radar beam, and then the radar meter picks up the second car if it is within the beam or just entering the radar beam. On recross examination this witness testified that if the second car would tie the first car, and then pass it at the point of the radar beam, the radar speed meter would stop reading the first car and register the speed of the second car passing through the radar beam.

The defendant, John F. Holub, and John G. Kucera are musicians. On the evening of June 20, 1959, they were entertaining in a tavern in Columbus. They were required to be out of the tavern by 1 a.m. When they left Columbus they were all sitting in the front seat of the defendant's car. Holub was to the defendant's right, John G. Kucera was to Holub's right, and the defendant was driving the car.

The defendant testified that he owned a 1950 Chevrolet car and had owned it for over 4 years; that the speedometer of this car registered 85,000 miles; that when he drove his car from Columbus, he drove on the Lincoln Highway; that while doing so, two cars passed him; that the first car passed him about 1 mile west of the canal, and the second car passed him right close to the canal; that the cars were close together; and that the second car passed on the left side of him just west of the canal. When the second car had passed them, Holub said: "Look at that boy going. * * * Here we go only 47 miles, and look at him where he is already." He further testified that the speed of his car was 46 or 47 miles an hour; that he always kept the speed of his car under 50 miles an hour; that the patrol officer stopped him not quite a mile from the canal; that after the officer stopped him he rolled the window of his car down and told those riding with him he wondered what had happened, it must be a taillight; and that he asked the officer what the trouble was and the officer told him that the radar meter registered the speed of his car at 72 miles an hour, and that he was speeding. The defendant told the officer that two cars had passed him at a high rate of speed, but the officer would not listen to him and requested his driver's license which he gave to the officer. The defendant further testified that after his arrest he tested his car for speed and got it up to 65 miles an hour and it sputtered and missed; that he could not get it to a speed of 70 miles an hour; and that he never drove over 50 miles an hour.

John F. Holub testified that after he, the defendant, and John G. Kucera left Columbus in the defendant's car and proceeded down the highway, a car passed them at a speed of about 80 miles an hour while defendant's car was going at 47 miles an hour; and that as they arrived near the canal another car passed them. After proceeding almost a mile beyond the canal, a patrol officer drove along beside them and stopped them. This

witness asked the patrol officer what the trouble was, and he said "speeding." This witness told the patrol officer that he was mistaken. He further testified that the defendant's car was traveling at a rate of speed of 47 or 48 miles an hour. He also testified that at no time when he looked at the speedometer was it ever showing over 50 miles an hour.

John G. Kucera testified that when the patrol officer stopped the defendant's car, the defendant told the officer about the two cars which had passed his car; that the cars were going very fast between Columbus and the canal, and were ahead of him; that the officer had the wrong car; and that the officer should catch the cars which had passed the defendant. He further testified that the two cars which passed the defendant's car were going very fast. This witness could not tell the make of the cars that passed the defendant's car, but the license plates showed they were from county 43. One of the cars passed the defendant's car about a mile west of the canal and the second car passed the defendant's car right at, or just west of, the canal. Holub said: "Look how this man is traveling." Holub then looked at the speedometer and said: "We are going only 47 miles an hour, * * *." This witness also looked at the speedometer and it indicated 47 miles an hour. He further testified that the defendant usually kept the speed of his car between 45 and 50 miles an hour; and that the defendant's speed just before his car was stopped by the patrolman was 47 miles an hour.

The defendant predicates error on the giving of instructions Nos. 1 and 6. The defendant also predicates error on the failure of the court to instruct on the issue as to whether the speed registered on the radar meter was reflected by the defendant's car or by another car. Other assignments of error are interrelated to the above and need not be set forth.

The defendant contends that the real issue in the case is, did the defendant's car go through the radar

zone at the same time as another car, and did the other car make the record as shown on the radar meter? The defendant also contends that the trial court failed to present that issue to the jury, and consequently withdrew the real issue from the jury.

Instruction No. 1, in part, charged the jury in the language used by the complaint, stated that the defendant pleaded not guilty, and that the trial was for the purpose of determining his guilt or innocence. The statement in instruction No. 1 was purely informative and true. There was no error in this instruction. See Smith v. State, 169 Neb. 199, 99 N. W. 2d 8.

Instruction No. 6 given by the trial court reads as follows: "The laws of Nebraska provide that the speed of any motor vehicle being driven upon any public street or highway may be determined by the use of radio-micro waves or other electronic device, and that the results of such determination shall be accepted as prima facie evidence of the speed of such motor vehicle in any court of (sic) legal proceedings where the speed of the motor vehicle is at issue. Such electronic devices are what is commonly called radar.

"Prima facie evidence is such evidence as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose.

"This does not mean that testimony, based upon the use of radar, is necessarily conclusive proof of the speed of the defendant's vehicle, but it is your duty to weigh such evidence together with all other evidence in relation to the guilt or innocence of the defendant, giving it such weight as it is entitled to receive under all the facts and circumstances. Neither does such evidence have the effect of shifting the burden of proof, which is always upon the State to prove the guilt of the defendant beyond a reasonable doubt."

Section 39-7,108.02, R. S. Supp., 1957, provides in part: "The speed of any motor vehicle being driven upon any public street or highway may be determined

by the use of radiomicro waves or other electronic device. The results of such determinations shall be accepted as prima facie evidence of the speed of such motor vehicle in any court or legal proceedings where the speed of the motor vehicle is at issue."

It will be noted that instruction No. 6 corresponds in part to the section of the statute as above set out.

The defendant's position is that the court was under a mandatory duty to give an instruction on the defense that a car other than the one belonging to the defendant went through the radar zone and registered the speed of 72 miles an hour, and the court's failure to do so constituted prejudicial error.

The defendant did not tender any instructions to the district court.

This court in Planck v. State, 151 Neb. 599, 38 N. W. 2d 790, quoted with approval from Jones v. State, 147 Neb. 219, 22 N. W. 2d 710, as follows: " 'The rule is well established that it is the duty of the court to instruct the jury on the law of the case, whether requested so to do or not; and an instruction or instructions which, by the omission of certain elements, have the effect of withdrawing from the consideration of the jury an essential issue or element of the case, is erroneous; but where the jury is instructed generally upon the law, and when the instructions given do not have the effect above stated, then error cannot be predicated upon the failure of the court to charge upon some particular phase of the case unless a proper instruction was requested by the party complaining.' " See, also, Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868; Smith v. State, *supra.*

In Smith v. State, *supra,* this court said: " 'Where the trial court has instructed generally as to the issues in a criminal prosecution, error can not be predicated on its failure to instruct as to a particular phase of the case, where no proper instruction has been requested by the party complaining.' Martin v. State, 67 Neb. 36, 93

N. W. 161. See, also, Frades v. State, 131 Neb. 811, 270 N. W. 314."

From an analysis of the entire charge to the jury in the instant case, we conclude that the instructions complained of do not constitute prejudicial error.

The jury heard all of the evidence and determined that the defendant was guilty as charged. We find no prejudicial error in the record. The judgment of the trial court should be, and is, affirmed.

AFFIRMED.