STATE OF NEBRASKA, APPELLEE, v. THEOPHILIS LEWIS, ALSO KNOWN AS THEOPHILIS X, APPELLANT.
STATE OF NEBRASKA, APPELLEE, v. CLARENCE JACKSON, ALSO KNOWN AS CLARENCE 3X, APPELLANT.
165 N. W. 2d 569

Filed March 7, 1969. No. 36888.

Edward Jacko, Ray C. Williams, and Eugene D. O'Sullivan, Jr., for appellants.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ., and MORAN, District Judge.

WHITE, C. J.

In a consolidated jury trial, the defendants Lewis and Jackson were convicted of forcibly assaulting or resisting a law enforcement officer while engaged in the performance of his official duty and while in the commission of said act of using a deadly or dangerous weapon. §§ 28-729, R. R. S. 1943, and 28-729.01, R. S. Supp., 1967.

The defendant Lewis was also convicted of assault with intent to inflict great bodily injury upon a police officer, Robert Mahoney. Jackson was sentenced by the court to a period of 2 years in the Nebraska Penal and Correctional Complex and Lewis was sentenced to concurrent terms of 5 years on the two counts of the information described above. From the judgments of conviction and the resulting sentences, both defendants appeal. We affirm the judgments and sentences of the district court.

The pertinent sections of the statute, under which the defendants were prosecuted, are as follows. Section 28-413, R. R. S. 1943: "Whoever assaults another with intent to inflict a great bodily injury shall be punished upon conviction thereof * * *." Section 28-729.01, R. S. Supp., 1967, provides as follows: "Whoever forcibly assaults or resists any law inforcement officer while engaged in or on account of the performance of his official duties shall be guilty of a felony and shall, upon conviction thereof, * * *. Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be guilty of a felony and shall, upon conviction thereof, be punished * * * by a fine * * * or by imprisonment * * *." The defendants complain of the insufficiency of the evidence. There is ample evidence in the record to sustain the following facts and reasonable inferences therefrom: Lewis, free on bond, appeared in the company of Jackson for a preliminary hearing in municipal court of Omaha, Nebraska. Prior to the hearing an Omaha police officer, Lieutenant Robert Mahoney, had served a warrant on Lewis. He then accompanied Lewis, who was in the company of Jackson and one Zachary, into the courtroom where the preliminary hearing took place. At the end of the preliminary hearing the municipal judge bound Lewis over to district court, and upon surrender by the bondsman, directed the police officer to remand Lewis to the county jail. A mittimus was secured. The order to remand Lewis to the county jail was issued directly by the judge in the courtroom,

Mahoney, pursuant to this order, instructed police Sergeant Barrett to call for uniformed police officers to do the actual transporting of Lewis to the county jail. He ordered them to handcuff Lewis. When the uniformed police officers arrived and moved forward to execute the order Lewis insisted that he was not going to jail or to be placed in handcuffs. He bolted forward, thrashing his arms about, bounced off the wall, and attacked Mahoney directly. Mahoney was dressed in a civilian suit but was armed with a .38 caliber snub-nosed pistol which he carried in a holster on his left side under his coat. In the assault on Mahoney, the officer testified that he felt Lewis' hand down around his waist and he immediately placed his own hand on the butt of his gun; that Lewis put his hand on top of the officer's hand, and the gun came out of the holster; that thereafter a struggle for possession of the gun continued; that the gun at various times pointed upward, downward, and at times in the general direction of the officer's chest and his head; that the officer had his thumb on the hammer of the pistol and his finger on the trigger; and that Lewis' finger was inside the trigger guard and over the top of his own finger. The evidence shows that a general melee ensued with Zachary striking Mahoney on the back of the shoulders and with Jackson swinging and striking at the other officers who were coming to Mahoney's assistance. Mahoney testified that he was unable to control the gun and he allowed his thumb to come off the hammer which permitted the gun to fire. The gun discharged into Lewis' left leg. Lewis and Mahoney both fell to the floor wresting for control of the gun and that at one point Lewis was on top of Mahoney and that while Mahoney was on his back the gun fired once more; that at this time the gun was pointed toward the shoulders and chest of Lewis when it discharged; and that the struggle continued for a considerable period of time, proceeded from the courtroom, through the door, and out into the corridor or hall. The

evidence shows that after the second shot struck Lewis that Lewis' hand came free from the gun thus allowing Mahoney to break loose; and that he got to his feet and assisted another officer by the name of Mead in putting handcuffs on Lewis. Mahoney, Lewis, Jackson, Zachary, and several police officers were involved in the continuous fray in the courtroom and out in the hall which lasted for several minutes. There is voluminous testimony corroborating and filling in the details of the previous skelton outline of the essential testimony. It is unnecessary to burden this opinion with a recital of it. Suffice it to say that the evidence was ample to sustain the finding that Mahoney was in the process of executing a lawful order to take Lewis into custody; and that Lewis initiated an attack against Mahoney stating, in effect, that his purpose was to resist the arrest and the handcuffing. The use of force in accomplishing this objective is obvious from the above recital. The evidence is conclusive that Lewis knew Mahoney was a police officer; and the inferences are at least reasonable that at the beginning of his attack upon Mahoney he was attempting to control and intended to use the .38 caliber snubnosed pistol being carried on Mahoney's left hip. Indeed, it may be readily observed, considering the number of officers and people involved, it was indeed fortunate that this unprovoked and highly aggravated assault with the attempt to gain control of the officer's gun did not result in death or serious injury to the participants.

The evidence with reference to Jackson may be succinctly summarized by the direct testimony of Timothy Mead, an Omaha police officer. This witness testified that he was on duty on April 3, 1967; that he was directed along with officer Raisanen to go to courtroom No. 4 on the third floor of the interim city hall; that they both went to the courtroom at about 2:50 p.m.; that there they were ordered by Mahoney to take Lewis to the county jail; that when they approached Lewis and attempted to handcuff him, Lewis backed up; that when

Mahoney and Raisanen touched Lewis, he kicked out and knocked him (Mead) to the floor; that when he got back up the other parties were scuffling in the hallway and finally out into the main corridor outside of the courtroom; that when he took a few steps out of the courtroom he heard a shot, felt pain in his right ankle, and again fell to the floor; that he saw Lewis and Mahoney scuffling for control of Mahoney's gun; that he got to his feet, drew his revolver, waited until he had a clear shot at Lewis; that when he did fire at him, he missed; that then things seemed to calm down and he stood with his gun covering Lewis who was being handcuffed; that when he lowered his gun to his side, Jackson bent his arm back and grabbed the gun from his hand; that someone immediately grabbed Jackson and Mead grabbed his gun back again; and that he was taken to the county hospital, treated there for the gunshot wound, and released about 2 hours later. There is ample testimony from many other witnesses directly corroborating the above testimony and elaborating it into a detailed picture that interrelates persuasively and is amply sufficient to speak the truth beyond a reasonable doubt. The elements necessary to establish the commission of this offense are simply described in the statute and easily understood by the average person. The defendants were attempting to and offered to use the weapon. Although not articulated as such it seems the defendants' theory is that the frustration by the police officers of their attempt to get final and complete control and the use of the gun should now be considered as a defense. Exclusive control of a weapon and either the firing or the threat are not elements required under the terms of the statute. To place such a construction on the statute would be irrational and emasculate its obvious purpose.

The defendants' evidence, of course, conflicts with the testimony of the State. As we have said many times, the credibility of the witnesses and the weight of the evidence in a criminal case are for the jury and a verdict

will not be set aside if the evidence sustains some rational theory of guilt. State v. Reeder, 183 Neb. 425, 160 N. W. 2d 753; Sedlacek v. State, 166 Neb. 736, 90 N. W. 2d 340; Williams v. State, 115 Neb. 277, 212 N. W. 606.

The defendants challenge instruction No. 7 given by the trial court. Instruction No. 7 is a recital of the pertinent portions of the applicable statutes given in the same words as recited previously at the bginning of this opinion. They complain that this instruction introduces an element of speculation in the case by misleading the jury into a possible conclusion that it was not necessary to find that a deadly weapon was used by the defendants against the officers involved. The language of the statute quoted on its face refutes this argument, but in any event, instructions must be considered together and instructions No. 9 and No. 10 included the following element the court required the State to prove beyond a reasonable doubt: "5. That at the time the defendant did so, he intended to forcibly assault or resist said Robert Mahoney, and while in the commission of said act *did use a deadly or dangerous weapon; * * *."* (Emphasis supplied.) It is difficult to understand how the court could have more clearly or more accurately stated the requirement of the statute as to this element. There is no merit to this contention.

Jackson complains that he was entitled to a self-defense instruction because he was defending himself from an attack by Barrett during the course of the involved and extended melee heretofore described. Jackson requested no instruction on this and the evidence in this respect is as follows: "Q. When you got down near the elevators did you still have your service revolver? A. Yes, I did. Q. In your hand? A. Yes, it was. Q. What happened then? A. I was standing over where Theopholis X and Lieutenant Mahoney were. They seemed to be calmed down and just about under control, and I stood covering Theopholis X, and I had seen that the handcuffs were almost on Theopholis X

when I lowered my gun to my side, and then at this time another party came up behind me and bent my arm back and took my gun. Q. What happened then? A. Someone grabbed this party from behind almost as soon as this party had taken the gun, and I grabbed the gun back again. Q. Do you have any idea who the party was that grabbed your gun? A. Yes. Q. Who was that? A. Clarence 3-X." There is insufficient evidence to sustain the giving of any such instruction and moreover, the court fully and clearly instructed as to all of the essential elements necessary to be proved by the State. We have often held that if the court has instructed the jury generally on the law of the case and has not withdrawn any essential issue from consideration of the jury, error cannot be predicated on failure to charge on some particular phase of the case, unless proper instruction has been requested by the party complaining. See, State v. Brown, 179 Neb. 386, 138 N. W. 2d 465; Kucera v. State, 170 Neb. 368, 102 N. W. 2d 635.

The defendants next contend that the trial court, by its rulings on certain offers of testimony, prevented them from developing their theory of the case. We summarize these contentions. First, they contend they attempted to offer evidence inquiring into the duty of police officers to transport prisoners to the Douglas County jail. This is clearly immaterial and serves no purpose in proof of the issues in this case. It is undisputed and there is no question that the municipal court judge gave a direct order to Mahoney in the courtroom to remand Lewis to the county jail. Second, they attempted strenuously to go into the particulars of the crime Lewis was charged with that gave rise to the preliminary hearing at which the incidents giving rise to this case occurred. The circumstances of the charge and of the crime accused of at the preliminary hearing are entirely immaterial and have no bearing on the commission of the offense charged in this case and were properly excluded by the trial court. Third, Lewis

suggests that there was a denial of his rights and that he was not represented by counsel at the preliminary hearing which was the occasion of the incident leading to the charges involved in this case. Again that issue is entirely immaterial to the issues present in this case. It could not be disputed that Lewis was lawfully detained and the order committing him to county jail was a legal one. We know of no rule which would permit defendants to contend that they were entitled to counsel during the time they were engaged in the commission of the offenses alleged in this case. The evidence which does not tend to impeach any witness on a material point and which is not substantive proof of any fact relevant to the issues is properly excluded in the trial of a criminal case. State v. Wilson, 174 Neb. 86, 115 N. W. 2d 794.

Last, defendants contend that section 28-729.01, R. S. Supp., 1967, is unconstitutional under the "void for vagueness" doctrine. It is contended, in effect, that the use of the terms "forcibly resist," "use," "deadly," "dangerous," and "weapon" are not specifically defined. They contend that the meaning of these words is left to the speculative discretion of the jury and furnish no ascertainable standard for the determination of guilt or innocence. The defendants' arguments in this respect are ingenious but untenable. They consist of possible constructions of the word "use," of constructions out of the context of the language of the statute, and of hypothetical situations where perhaps the meaning of these words might be in doubt. We have said many times that in a penal statute it is not necessary that it be so written as to be beyond the mere possibility of more than one construction. State v. Simants, 182 Neb. 491, 155 N. W. 2d 788; State v. Levell, 181 Neb. 401, 149 N. W. 2d 46. A statute should be construed in the context of the object sought to be accomplished, the evils and mischiefs that are sought to be remedied, and the purpose for which it serves. Although a penal statute is required to be strictly construed, it should be given a sensible

construction and general terms therein should be so limited in their construction and application so as not to lead to injustice, oppression, or an absurd consequence. State v. Simants, *supra;* Macomber v. State, 137 Neb. 882, 291 N. W. 674; State v. Tatreau, 176 Neb. 381, 126 N. W. 2d 157. It is the duty of this court to give a penal statute an interpretation which meets constitutional requirements if it can reasonably be done. State v. Simants, *supra.* It is apparent that the words attacked in the context of this statute are words of common usage, and commonly used in penal or criminal statutes. It might be said that they are words in common context that descend to the level of an irreducible minimum of definition. Ordinarily such words of common usage need not be defined in the statute or in an instruction of the court. State v. Holland, 183 Neb. 485, 161 N. W. 2d 862. We see nothing in the use of the word "forcibly" either in context or as a word that needs further definition. And, we see no need for a further definition of the term "forcibly resist." If the element of force is included by implication in the word "resist" then we see nothing unconstitutionally vague or void by any redundancy involved in the use of the word "forcibly." The application of these terms to the specific facts involved in this case leaves no doubt that they furnish a clear example of what the average person would understand as being "forcible resistance." We do not have a case here of a borderline doubt in which distinctions must be drawn as to the meaning of these terms. But, even if that were so, the proper attack would be a restriction on the construction of the terms to the specific case and not on the unconstitutionality of the act on its face for being void or vague. We come to the conclusion that there is no merit to these contentions as to the unconstitutionality of this statute.

There are other errors assigned but not argued and various contentions made in the brief unsupported by

any assignment of error or propositions of law. There is no merit to any of these.

The judgments and sentences of the district court are correct and are affirmed.

AFFIRMED.