PETER P. KLEINSCHMIDT V. STATE OF NEBRASKA.

FILED MARCH 7, 1928. No. 26101.

*H. E. Burkett,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and HOWELL, JJ., and BROADY, District Judge.

HOWELL, J.

This is a proceeding in error to the district court for Cedar county. Peter P. Kleinschmidt was convicted of

stealing some pigs from a man by the name of Bacon who lived several miles from the home of the accused. He was given one year in the penitentiary. When this case was argued and submitted, only three assignments of error appeared in the brief of plaintiff in error. Since that time he has been permitted to file another. Only the last error assigned will be considered, the other three being undeserving.

The accused went on trial for stealing 20 pigs belonging to Bacon. On a day stated, Bacon left home about 9 o'clock in the forenoon, returning about 5 o'clock on the evening of that day. During the interval the pigs were stolen. No one witnessed the theft. No one saw the accused within from 1½ to 2½ miles of the Bacon premises. No witness saw the pigs in possession of accused on that day, unless it be the wife, and one or two other witnesses who were probably friends and associates of the accused, all of whom said the pigs were brought to the premises of accused by one Mabis. Some days later the sheriff and Bacon went to the home of accused and there located the pigs. The accused gave a most fantastic and highly improbable explanation of his possession.

Other facts and circumstances were shown upon the trial. The conviction is based entirely upon circumstantial evidence. The defense was that the accused purchased the pigs from Mabis about noon of the day they were stolen. At the trial the accused repudiated his explanation as to how he got the pigs and testified that he bought them from Mabis. On cross-examination the record shows the following:

"Q. Are you the same Peter P. Kleinschmidt who was convicted, or plead guilty, in this court for trafficking in liquor about two years ago; are you the same fellow? Mr. Burkett: Objected to as being incompetent, irrelevant and immaterial. Overruled; to which defendant excepts. Q. Are you? A. Yes, sir. Q. You are the same guy, are you? A. Yes, sir."

The accused called his wife to testify in his behalf, who

said that she was present when Mabis brought the pigs to her home, at which time Mabis told her he had bought the pigs. They were unloaded at the place of accused. On cross-examination she testified as follows:

"Q. Are you the same Ida Kleinschmidt who was convicted in this court about two years ago for having a still in your possession and having intoxicating liquors? A. Yes, sir."

The fourth assignment of error sets out the testimony, objections and answers of Peter P. Kleinschmidt, as first above quoted. There was no objection to the question and answer, copied above, as to Mrs. Kleinschmidt. Accused had already testified, and similar testimony was admitted as to him over objection. So, it may be said, counsel for defendant yielded to the ruling of the court and, for that reason, made no further objection to that class of testimony. It is thought by some that section 10186, Comp. St. 1922, prohibiting the setting aside of judgments in criminal cases for "misdirection of the jury," "improper admission or rejection of evidence," if "no substantial miscarriage of justice has actually occurred," prevents a reversal of the conviction in this case. This section has no application where the province of the jury will necessarily have to be invaded, or, stated in another way which is more acceptable to some of the court, where the province of the jury is prejudicially invaded.

Article I, sec. XI, of the Nebraska Constitution, provides that, in all criminal prosecutions, the accused shall have the right to a fair trial by a jury. A jury consists of twelve qualified persons aided by a judge learned in the law to give directions and guidance to the trial. The judge determines for the jury what evidence it may consider and what law governs the same. When the judge admits evidence, he invites the jury to consider the same; and when he tells the jury what the law is, the jury are bound to accept it as final. The admission of immaterial evidence of a harmless nature may be of no consequence. An instruction that is technically faulty, but which clearly does

not mislead the jury, will not ordinarily prejudice the accused. Misconduct of the prosecutor, tending to prevent a fair trial, may be overcome by timely denunciation by the court. The subsequent striking of prejudicial testimony, accompanied with adequate directions by the court telling the jury not to consider it, may well be said to prevent a miscarriage of justice and a substantial wrong. Other instances, affording ample room for the application of the section, might be ,stated. That section does not mean that this court is to make itself a tryer of fact, contrary to the Constitution preserving trial by jury. When the jury have been improperly directed relative to the issues being tried upon testimony that is relevant, and slight and immaterial errors occur which may be said with some degree of certainty did not affect the verdict, said section is applicable and controlling. In other respects the Constitution controls.

In speaking of the federal Constitution Justice Day, in *Weeks v. United States*, 232 U. S. 383, 392, says: "This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws." And in speaking of the tendency to execute the criminal laws by violating the Constitution in order to "obtain conviction," says that such "should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." See *Marron v. United States*, 48 Sup. Ct. Rep. 74.

It has become somewhat fashionable to slur the courts for allowing criminals to escape through technicalities. If it be a technicality to guard the constitutional rights of our people by the use of the sword, then may it be truly said that courts engaged in the same efforts may be too technical. The oppressions out of which our system of constitutional government grew did not originate here, but the memory of them was brought from over the seas by those who understood the reasons for their coming, and who

fought and won the manly estate which we have inherited. The courts are established to see to it that the saying, "It is only three generations from shirt sleeves to shirt sleeves," shall not be paraphrased into "It is only a few generations from oppression to oppression."

In *Dunlap v. State, ante,* p. 313, being a prosecution for "the unlawful sale of intoxicating liquor," this court held that it was reversible error for the prosecutor to inquire of the defendant, on cross-examination, while he was a witness in his own behalf, "if he had ever pleaded guilty of unlawful possession of intoxicating liquor," and that, because of such inquiry, "the defendant was denied a fair and impartial trial." The case at bar is much stronger than *Dunlap v. State.* It might be argued with some force that prior traffic in intoxicating liquors might have some relation to the subject-matter of a prosecution for the illegal sale thereof. Through no artifice, however contrived, can bootlegging be projected into the crime of hog stealing.

It is unfortunate that the prosecuting attorney, in his zeal, overstepped the line of proper cross-examination of both the defendant and his wife. There is no relation whatever between crimes against the liquor law and the crime for which defendant was being tried. We have held so often that evidence of independent crimes is inadmissible, in cases of this character, that we feel it our duty to admonish prosecutors to refrain from injecting such error into the court record. The evidence is wholly circumstantial, and while sufficient to take the case to a jury, it should be without the poisonous influence of entirely immaterial and incompetent testimony. The people of this state have voted the legitimate traffic in intoxicating liquors out of existence because of the baneful effect of the saloon. There was a strong sentiment against licensed saloons which is more pronounced against the bootlegger. It would be difficult to secure a jury of twelve men anywhere in the state, some of whose minds would not revolt against a convicted bootlegger. If, as in this case, both the defendant and his wife appear to be bootleggers, the tendency

is to at once denounce them as mere trash. It would amount to almost certain impeachment of both as witnesses in a manner contrary to law, which defines with absolute certainty the proper method of impeaching witnesses. The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.