ALVIN HANS, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

25 N. W. 2d 35

FILED NOVEMBER 22, 1946. No. 31992.

*Eugene D. O'Sullivan, Arthur J. Whalen,* and *Ernest S. Priesman,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Homer L. Kyle,*

for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiff in error, Alvin Hans, was convicted in the district court for Douglas County of the crime of foeticide and sentenced to serve a period of not less than one or more than five years in the penitentiary. From that conviction and sentence he prosecuted error proceedings to this court. We affirmed that conviction and sentence. See Hans v. State, *ante* p. 67, 22 N. W. 2d 385.

Plaintiff in error then filed his motion for rehearing and we granted the same solely on the question of the sufficiency of the instructions. The cause is now here for consideration on that question.

Information was filed and plaintiff in error was convicted under section 28-404, R. S. 1943, and sentenced to a period from one to five years in the penitentiary.

Section 28-404, R. S. 1943, is as follows: "Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or foetus, at any stage of utero gestation, any medicine, drug, or substance whatever, or who shall use or employ, or devise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or foetus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall, *in case of the death of such vitalized embryo, or foetus,* or mother, *in consequence thereof,* be imprisoned in the penitentiary not less than one nor more than ten years."

The court by instructions No. 2 and No. 3 instructed the jury as follows:

"The Information in this cause charges and alleges in substance that on or about the 26th day of October, 1944, Alvin Hans, in the County of Douglas and State of Nebraska, then and there being, in and upon one Lucille Nicholson, then and there being, she, the said Lucille Nichol-

son, then and there being pregnant with a vitalized embryo or foetus, did unlawfully, wilfully and maliciously make an assault, and that the said Alvin Hans, unlawfully and feloniously did use and employ in and upon the body and womb of the said Lucille Nicholson, the mother of said vitalized embryo or foetus, certain instruments and other means, the nature and kind of said instruments and other means being to affiant unknown, with the intent then and there unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus, the same not being necessary to preserve the life of the said Lucille Nicholson, the mother, and not having been advised by two physicians to be necessary for that purpose, and *thereby inflicted on the womb and other internal parts of said Lucille Nichcolson, and on said vitalized embryo or foetus, certain wounds and bruises, of which said wounds and bruises the said vitalized embryo or foetus did thereafter on or about the 26th day of October, 1944, die,* and was thereafter removed and taken from the womb of the said Lucille Nicholson on or about the 26th day of October, 1944, in said county, and state, *and that the said Alvin Hans, the vitalized embryo or foetus aforesaid, unlawfully, feloniously and purposely did kill and slay,* contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Nebraska."

"The Statute of the State of Nebraska upon which this prosecution is based, provides: 'Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or foetus, at any state of uterogestation, any medicine, drug or substance whatever, or who shall use or employ, or devise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or foetus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall, *in case of death of such vitalized embryo, or foetus,* or mother, *in consequence thereof'*, be punished as provided by law."

In the first paragraph of instruction No. 4 the court instructed the jury as follows: "The defendant has been arraigned on said information and has pleaded not guilty. The plea of not guilty by the defendant casts upon the State of Nebraska the burden of establishing every material allegation in the information beyond a reasonable doubt."

Instruction No. 5 is as follows:

"The material allegations and elements necessary to be established by the evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in the Information, are:

"1. That at and immediately before the alleged commission of the unlawful act charged against the defendant herein, the said Lucille Nicholson was pregnant with a vitalized embryo or foetus.

"2. That while said Lucille Nicholson was pregnant as aforesaid, the defendant, Alvin Hans, unlawfully and feloniously used and employed in and upon the body and womb of said Lucille Nicholson a certain instrument or instruments, or other means of any kind or character whatsoever, with the intent unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus.

"3. That said act or operation was not necessary to preserve the life of said Lucille Nicholson, nor was it advised by as many as two physicians to be necessary for that purpose.

"4. That said act or operation was done by defendant on or about the 26th day of October, 1944.

"5. That said act or operation occured within the County of Douglas and State of Nebraska.

"If you find from the evidence beyond a reasonable doubt that the State has established each and all of the foregoing propositions, then it will be your duty to find the defendant guilty of the crime charged in the Information; otherwise, you will find him not guilty."

It will be noted that this instruction is a complete statement by the court of what elements constitute the crime

and that the jury's determination of the guilt or innocence of the plaintiff in error was to be determined thereby.

The plaintiff in error complains that an essential element of the crime was left out of instruction No. 5 and this he claims constitutes prejudicial error. This element has been italicized in the foregoing statute and instructions.

It is evident that the trial court, by means of instruction No. 5, endeavored to specifically set forth the essential elements of the crime of which the plaintiff in error was charged but omitted therefrom the essential element which has previously been italicized, namely, "the death of such vitalized embryo, or foetus."

In addition to the above the court gave instruction No. 7 as to the element of intent, which reads as follows:

"Intent is an essential element in this case and must be established by the evidence the same as any other material element, beyond a reasonable doubt, but you are likewise instructed that every sane person is presumed to intend the natural and probable consequences of his voluntary act.

"Therefore, should you believe from the evidence beyond a reasonable doubt that the defendant used or employed an instrument or instruments or other means of any character whatsoever in and upon the body and womb of Lucille Nicholson, while pregnant with a vitalized embryo or foetus, as charged in said information, and that the natural and probable consequence of such use or employment of said instrument or instruments or other means would be the destruction of said vitalized embryo or foetus, then the presumption would be that the defendant intended the destruction of said vitalized embryo or foetus."

By instruction No. 5, with the addition of instruction No. 7, the court in effect submitted to the jury the question of the plaintiff in error's guilt or innocence of the crime defined in section 28-405, R. S. 1943, which has a lesser penalty.

This statute reads as follows: "Any physician or other person who shall willfully administer to any pregnant

woman any medicine, drug, substance, or thing whatever, or shall use any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by two physicians to be necessary for that purpose, shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars, or by both."

It is, of course, true that "All instructions given should be considered in determining whether a particular instruction is prejudicial." Foreman v. State, 126 Neb. 619, 253 N. W. 898.

However, "It is the duty of the court to instruct the jury on the law of the case, whether requested to do so or not, and if the instructions, by the omission of certain elements, have the effect of withdrawing from the consideration of the jury an essential issue or element of the case, it is error." Glasgow v. State, ante p. 279, 22 N. W. 2d 842.

As stated in Goldsberry v. State, 66 Neb. 312, 92 N. W. 906: "It is error for the court to instruct the jury that they may convict the defendant without finding a specific fact which constitutes one of the essential ingredients of the offense charged."

As stated in Thompson v. State, 61 Neb. 210, 85 N. W. 62: "The seventh paragraph of the court's charge is a defective definition of murder in the second degree. The attorney general does not defend the instruction, but contends that it furnishes no ground for reversal, because the elements of the crime were correctly stated in another instruction. This question is not a new one. It has been frequently decided by this court, and the rule is a just one and founded in good sense, that the jury should not be required to choose between conflicting instructions. First Nat. Bank v. Lowrey, 36 Nebr., 290; Carson v. Stevens, 40 Nebr., 112; Richardson v. Halstead, 44 Nebr., 606; Barr v. State, 45 Nebr., 458; Metz v. State, 46 Nebr. 547."

In view of the holding in our former opinion it will be assumed, for the purpose of this opinion, that the evidence would sustain the conviction had the court properly submitted the question of the plaintiff in error's guilt or innocence of the crime charged. However, having failed to do so the rights of the plaintiff in error were thereby prejudiced.

In this respect we have not overlooked section 29-2308, R. S. 1943, and our holdings thereunder. However, it is still the duty of a jury to determine the guilt or innocence of a person charged with a statutory crime and if any of the essential elements of the crime are omitted therefrom, thereby having the effect of withdrawing those issues from the jury, it should be reversed for retrial for we should not and cannot substitute ourselves for the jury in determining whether or not such elements have been established beyond a reasonable doubt. See Glasgow v. State, *supra*.

As stated in Kleinschmidt v. State, 116 Neb. 577, 218 N. W. 384:

"This section has no application where the province of the jury will necessarily have to be invaded, or, stated in another way which is more acceptable to some of the court, where the province of the jury is prejudicially invaded.

"Article I, sec. XI, of the Nebraska Constitution, provides that, in all criminal prosecutions, the accused shall have the right to a fair trial by a jury. A jury consists of twelve qualified persons aided by a judge learned in the law to give directions and guidance to the trial. The judge determines for the jury what evidence it may consider and what law governs the same. When the judge admits evidence, he invites the jury to consider the same; and when he tells the jury what the law is, the jury are bound to accept it as final. The admission of immaterial evidence of a harmless nature may be of no consequence. An instruction that is technically faulty, but which clearly does not mislead the jury, will not ordinarily prejudice the accused. Misconduct of the prosecutor, tending to prevent a fair trial, may be overcome by timely denunciation by the

court. The subsequent striking of prejudicial testimony, accompanied with adequate directions by the court telling the jury not to consider it, may well be said to prevent a miscarriage of justice and a substantial wrong. Other instances, affording ample room for the application of the section, might be stated. That section does not mean that this court is to make itself a tryer of fact, contrary to the Constitution preserving trial by jury."

And in Fetty v. State, 119 Neb. 619, 230 N. W. 440: "The state would have us apply it to this case by having this court determine from the record that the defendant was guilty, and that therefore defendant has not been prejudiced because no other verdict could have been returned. The guilt or innocence of the defendant is not to be determined *de novo* in this court, but is one for a jury, drawn, summoned, and impaneled as provided by law."

For a full discussion of the applicability of section 29-2308, R. S. 1943, see Scott v. State, 121 Neb. 232, 236 N. W. 608, wherein this court stated: "Such discretion must be exercised, however, in such a way as to do the prisoner no substantial wrong or to occasion no miscarriage of justice, as no greater wrong can be done a prisoner than to deprive him of the privilege of a trial by a jury of his peers on a question of fact material to the actual issue to be determined, and to substitute therefor the decision of the judges who have not heard the evidence and who have never seen the prisoner. The fact must not be overlooked that it is the free, unbiased verdict of the jury that the accused is entitled to have. * * * One of these safeguards was that a fair determination of the facts involved in a criminal prosecution adversely to the accused, by a constitutional jury, was a prerequisite to the infliction of punishment."

For the reasons herein stated our former judgment of affirmance is vacated and set aside and the case is reversed and remanded for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

MESSMORE, J. dissenting.

As stated in the majority opinion, the defendant was informed against under section 28-404, R. S. 1943, as follows: "Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or foetus, at any stage of utero gestation, any medicine, drug, or substance whatever, or who shall use or employ, or devise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or foetus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case of the death of such vitalized embryo, or foetus, or mother, in consequence thereof, be imprisoned in the penitentiary * * *."

Trial was had and the defendant was convicted by a jury of the offense charged.

The defendant contended in this court that the trial court erred in submitting to the jury instruction No. 5, as follows:

"The material allegations and elements necessary to be established by the evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in the Information, are:

"1. That at and immediately before the alleged commission of the unlawful act charged against the defendant herein, the said Lucille Nicholson was pregnant with a vitalized embryo or foetus.

"2. That while said Lucille Nicholson was pregnant, as aforesaid, the defendant, Alvin Hans, unlawfully and feloniously used and employed in and upon the body and womb of said Lucille Nicholson a certain instrument or instruments, or other means of any kind or character whatsoever, with the intent unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus.

"3. That said act or operation was not necessary to preserve the life of said Lucille Nicholson, nor was it advised by as many as two physicians to be necessary for that purpose.

"4. That said act or operation was done by defendant on or about the 26th day of October, 1944.

"5. That said act or operation occurred within the County of Douglas and the State of Nebraska.

"If you find from the evidence beyond a reasonable doubt that the State has established each and all of the foregoing propositions, then it will be your duty to find the defendant guilty of the crime charged in the Information; otherwise, you will find him not guilty."

In the majority opinion the defendant is. upheld in his contention that instruction No. 5 omitted an essential element of the offense as charged, that is, proof of the death of the vitalized embryo or foetus beyond a reasonable doubt, and by so doing, the substantial rights of the defendant were affected and he was denied a fair and impartial trial, to his prejudice.

As to whether or. not the instruction complained of is prejudicially erroneous, the law is well settled in this state that instructions should be construed together, and if, when considered as a whole, they properly state the law, it is sufficient. See Ford v. State, 46 Neb. 390, 64 N. W. 1082; Clary v. State, 61 Neb. 688, 85 N. W. 897; Mauzy v. State, 103 Neb. 775, 174 N. W. 325; Mills v. State, 53 Neb. 263, 73 N. W. 761, and other cases too numerous to cite.

Having the foregoing well-established rule of law in mind, it is advisable to set out certain of the instructions given by the trial court.

"Instruction No. 2. The Information in this cause charges and alleges in substance that on or about the 26th day of October, 1944, Alvin Hans, in the County of Douglas and State of Nebraska, then and there being, in and upon one Lucille Nicholson, then and there being, she, the said Lucille Nicholson, then and there being pregnant with a vitalized embryo or foetus, did unlawfully, wilfully and maliciously make an assault, and that the said Alvin Hans, unlawfully and feloniously did use and employ in and upon the body and womb of the said Lucille Nicholson, the mother of said vitalized embryo or foetus, certain instru-

ments and other means, the nature and kind of said instruments and other means being to affiant unknown, with the intent then and there unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus, the same not being necessary to preserve the life of the said Lucille Nicholson, the mother, and not having been advised by two physicians to be necessary for that purpose, and thereby inflicted on the womb and other internal parts of said Lucille Nicholson, and on said vitalized embryo or foetus, certain wounds and bruises, of which said wounds and bruises the said vitalized embryo or foetus did thereafter on or about the 26th day of October, 1944, die, and was thereafter removed and taken from the womb of the said Lucille Nicholson on or about the 26th day of October, 1944, in said county, and state, and that the said Alvin Hans, the vitalized embryo or foetus aforesaid, unlawfully, feloniously and purposely did kill and slay, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Nebraska."

It will be noted that this instruction setting forth the information is substantially in the language of section 28-404, R. S. 1943, and includes every element of the offense with which the defendant is charged. It will be noted, especially, that the defendant is charged with "unlawfully, feloniously and purposely" killing the vitalized embryo or foetus of Lucille Nicholson. No language could be plainer.

Instruction No. 3, given by the trial court, sets forth section 28-404, R. S. 1943, upon which the prosecution is based, in its entirety. Here again, the case of death of such vitalized embryo or foetus, or mother, is set forth.

Instruction No. 4, is as follows: "The defendant has been arraigned on said information and has pleaded not guilty. The plea of not guilty by the defendant casts upon the State of Nebraska the burden of establishing every material allegation in the information beyond a reasonable doubt." The rest of the instruction need not be set out.

We gather from the language of instruction No. 4, that the issues are joined, and that the jury know by this time that

every material allegation of the information must be proven beyond a reasonable doubt, and that includes the fact that the defendant was charged with unlawfully, feloniously and purposely killing the vitalized embryo or foetus of Lucille Nicholson. This language seems quite clear.

Instruction No. 5, heretofore set out, in subdivision 2 thereunder, charged the defendant with the intent unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus. Intent is one of the essential elements of the offense charged, and here is a direct statement in the instruction complained of, that this defendant intended, by the use of certain instrument or instruments, or any other means or character, to unlawfully kill and destroy the vitalized embryo or foetus.

Instruction No. 7, is an instruction on intent, and, referring to instructions No. 2 and No. 5, intent is set forth as being an essential element of the offense charged. After defining intent as it is generally defined in instructions in criminal cases, the court, in instruction No. 7 said: "Therefore, should you believe from the evidence beyond a reasonable doubt that the defendant used or employed an instrument or instruments or other means of any character whatsoever in and upon the body and womb of Lucille Nicholson, while pregnant with a vitalized embryo or foetus, as charged in said information, and that the natural and probable consequence of such use or employment of said instrument or instruments or other means would be the destruction of said vitalized embryo or foetus, then the presumption would be that the defendant intended the destruction of said vitalized embryo or foetus."

Again, in plain and explicit language, the jury are instructed with reference to the destruction of the vitalized embryo or foetus.

Instruction No. 10, defines the terms "vitalized embryo" and "vitalized foetus" as used in the statute above quoted.

The following cases are applicable:

In Ford v. State, *supra*, the court, in an instruction, used the sentence, "Drunkenness is no excuse for crime."

Drunkenness was urged as a defense, and the fact that the court informed the jury that it was no excuse for crime, was held not to belittle the defense. The court said: "While the language used in the instruction might have been more concisely as well as clearly expressed, yet we are unable to see how it could have misled the jury." And in the same case an instruction was given, "If you find the defendant guilty you will determine in your verdict, under the evidence and these instructions, the value of the property, or what it was worth in the market." By this instruction the jury was told to fix the value of the ring in case a verdict of guilty was returned at what it would bring, or was worth, in the market. The instruction does not state whether the value was to be determined by a preponderance of the evidence, or beyond a reasonable doubt, but this was covered by another instruction. Therefore, all of the instructions were considered together and construed, and no prejudicial error appeared.

In Torske v. State, 123 Neb. 161, 242 N. W. 408, this court said: "The first instruction complained about relates to manslaughter * * *. The instruction was as follows: 'The jury are instructed that if you find from the evidence beyond a reasonable doubt, that, on the 27th day of February, 1931, in Lincoln county, Nebraska, the defendant, Mangus Torske, without deliberation, premeditation or malice, did unlawfully and feloniously kill Lewis C. Paulsen, with a shotgun, either upon a sudden quarrel or unintentionally, then said Mangus Torske would be guilty of manslaughter, * * *.' It is urged that the omission of the words 'while the slayer is in the commission of some unlawful act' following the word 'unintentionally,' was prejudicially erroneous." This instruction is immediately followed by the statutory definition of manslaughter which contained the language omitted from the instruction complained of. The court then said: "These instructions were not inconsistent, contradictory, nor confusing to the jury, but, taken together, they correctly state the law. * * * where instructions, taken together, correctly state the law,

the judgment will not be reversed because one does not state the entire law on the subject, unless it appear that the jury were misled."

In Frades v. State, 131 Neb. 811, 270 N. W. 314, the court held: " 'Whether an instruction is reversibly erroneous is not to be determined from its language alone, but from an examination and consideration of the whole charge. In other words, the instructions in a case should be considered together, not section by section or paraghaph by paragraph.' "

In Norton v. State, 119 Neb. 588, 230 N. W. 438, the court held: " 'Where the charge to the jury, considered as a whole, correctly states the law, the verdict will not be reversed by the appellate court merely because a single instruction, when considered separately, is incomplete.' " See, also, Samuels v. State, 101 Neb. 383, 163 N. W. 312.

A review of the transcript in Norton v. State, *supra*, discloses, as the court so aptly stated on page 591; "Some of the challenged instructions, if viewed independently, may be incomplete, but when considered in connection with the others given, which we must do under this record, they fairly submit to the jury the issues involved." See, also, Williams v. State, 115 Neb. 277, 212 N. W. 606.

In Mills v. State, *supra*, paragraphs 9 and 10 of the instructions were objected to as prejudicial. The first objection was that the instruction was devoted to stating certain questions to which the jury was to seek answers in the evidence, and if in the affirmative, the verdict of guilty was to follow, and if in the negative as to either of the stated propositions, the verdict was directed to be, "Not guilty." The instructions referred to the first count of the information, and the tenth instruction objected to was the same, and referred to the fourth count. The court said that such paragraphs of the instructions, detached from the other paragraphs and read and construed, may be in some respects and degree defective. Then the court discussed the propriety in giving such instructions, and concluded they

should not be given, but when considered in conjunction with the other instructions given which fairly reflected the law in the case, these instructions were not prejudicial. The opinion states: "It is urged that the court wholly failed to instruct the jury in regard to one material fact,— an element of the crime charged. We think a close scrutiny of the whole of the instructions will disclose that this criticism is not wholly merited. There are portions of them where some reference to it would have been proper, and should have been made; but, in view of the state of the evidence relative to the fact, the failure, where it occurred in the instructions, could have no other effect than a nondirection. The court held that there was no prejudicial error.

In McVey v. State, 57 Neb. 471, 77 N. W. 1111, it was held: "Instructions should be considered as an entirety, and where, without conflict, they correctly state the law which should govern the jury in its deliberations, no criticism will be available which counts upon the fact that one instruction covers but a part of the entire ground."

In the opinion, it was said: "It is urged that there was error in giving the fifth instruction, for the reason that in said instruction there is no requirement that the shooting be malicious to constitute the offense charged. In the first instruction there is a summary of the second count of the information, and in this summary malice is a very prominent factor. In the third instruction there are the provisions of the statute which McVey was accused of violating, and of the offense charged, as has already been indicated, malice is an essential ingredient. The fifth instruction expressly requires proof of the wounding being done as charged in the second count of the information,— that is, maliciously. These instructions, taken together, could not have left the jury in doubt as to the necessity of showing 'malice' as we have already defined that term, and the rule is that all the instructions should be read together."

In Philamalee v. State, 58 Neb. 320, 78 N. W. 625, the court defined larceny in an instruction and omitted the

felonious intent which is essential by the words, "converting it (property) to a use other than that of the owner" and said: "This court has more than once said, in effect, to constitute larceny the taking must be with felonious intent, and an instruction is erroneous which does not contain that ingredient of the crime of larceny. (Cases cited.) We are satisfied that the doctrine of those cases is sound, but it does not follow that the instruction here assailed is erroneous. It is not essential that an instruction defining larceny should contain the word 'felonious,' but if the words or language employed bear the same import it will suffice." Other instructions contained the element of felonious intent. The court said: "Instructions should be considered together, is the rule, and when so construed the crime of larceny was sufficiently defined in the charge in this case."

In the case of Bode v. State, 80 Neb. 74, 113 N. W. 996, an instruction was incomplete and did not cover all of the elements of the offense. The court said: "* * * it appears that the jury must have understood the purpose of the instruction complained of and could not have been misled thereby. Such an instruction standing alone may have been faulty, in that it was incomplete and did not cover all of the elements of the offense. Yet, when we consider it with the remainder of the charge, it could not result in any prejudice to the defendant, and the giving of it was not reversible error." A case similar in effect is Carleton v. State, 43 Neb. 373, 61 N. W. 699.

The general rule with reference to instructions given in an abortion case is as follows: "Instructions, as a body of directions to the jury, must be considered in their entirety, and it is not necessary that each instruction should be a complete statement of all the rules by which the jury are to be guided." 1 C. J. S., Abortion, § 38, p. 340.

"The instructions should be construed together as a whole. Hence, an error in one instruction may be cured by other instructions." 1 C. J., Abortion, § 119 p. 333.

In view of the well-established rules of law governing instructions as appear above, the writer can reach no other logical conclusion than that the majority opinion has utterly ignored the law applicable to the instructions in the instant case.

In addition to the foregoing authorities, section 29-2308, R. S. 1943, is material and for the purposes of this case reads, "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury * * * if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." This statute was duly enacted as Laws 1921, chapter 157, p. 648.

In construing this provision of the statute, the writer takes cognizance that the right of a trial by jury shall remain inviolate, and in all criminal prosecutions the accused shall have the right to a fair and speedy trial by an impartial jury, and all other constitutional safeguards that are guaranteed the accused.

A review of a few of the cases where his statute has been interpreted by this court is not amiss.

"Misdirection of a jury not causing a substantial miscarriage of justice does not require that a judgment shall be set aside * * *." The statute is then cited. Lorimer v. State, 127 Neb. 758, 257 N. W. 217.

In Harrison v. State, 133 Neb. 794, 277 N. W. 96, the information charged that the defendant did forcibly break and enter a motor vehicle with intent to steal property of value. Instruction No. 2 stated the elements along lines upon which the burden of proof is upon the state. Instruction No. 3 explained to the jury that the law provides that any person who shall break and enter, or enter without breaking, at any time, any motor vehicle, with intent to commit the crime of larceny or steal property, shall be guilty of a felony. Then the instruction stated: "If the evidence in this case fails to show that the defendant did break into the motor vehicle * * * it would be sufficient, under the

charge, that the state shall prove by evidence beyond a reasonable doubt that the defendant * * * entered the truck in question without actually breaking into it, with intent to steal property of value." Now the instructions as a whole did not properly set forth the offense as provided for in the statute. The instructions were confusing and deviated materially from the information which charged a forcible breaking and entering. This court said: "Under the mandate of section 29-2308, Comp. St. 1929, if the supreme court, in a criminal case, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred, it must affirm the judgment."

In the case of Phegley v. State, 113 Neb. 138, 202 N. W. 419, the defendant was charged with first degree murder and convicted on second degree murder. Several instructions were objected to, and one was an instruction on malice, which used the following language in substance "* * * you must be convinced beyond a reasonable doubt from all the facts and circumstances in evidence whether or not * * *." Now the contention was that the words "whether or not" in two instructions complained of, placed a burden on the defendant to prove that he did not have intent or malice, and thus robbed him of the presumption of innocence. The court said: "While the words were not apt in the connection used * * * yet, taking the court's charge as a whole, we cannot say that, by their inclusion, prejudicial error was committed. The true meaning and effect of instructions are not to be determined by the selection of detached parts thereof, but by considering all that is said on each particular subject or branch of the case.' (citing cases.) Then we are convinced that, from the use of these words 'No substantial miscarriage of justice has actually occurred.' Comp. St. 1922, sec. 10186."

The majority opinion cites Kleinschmidt v. State, 116 Neb. 577, 218 N. W. 384, with reference to the inapplicability of section 29-2308, R. S. 1943, to that case and the instant case. Peter P. Kleinschmidt was convicted of steal-

ing some pigs. On cross-examination the county attorney asked him if he was convicted and plead guilty for trafficking in liquor about two years ago, to which there was an objection. The objection was overruled. The witness replied, "Yes, sir." The county attorney asked him, "You are the same guy, are you?" A. "Yes, sir." The accused called his wife to testify to certain facts with reference to the pigs. On cross-examination she was asked by the county attorney if she hadn't been convicted, about two years ago, for having a still in her possession and having intoxicating liquors. She answered, "Yes, sir." The court said that it is thought by some that section 10186, Comp. St., 1922, which is now section 29-2308, R. S. 1943, would apply, and cited section 11, article I, of the Constitution with reference to a fair trial by jury, and set for the language as is stated in the majority opinion. The court said, however, on page 581, in explaining the inapplicability of the said statute to the case: "It might be argued with some force that prior traffic in intoxicating liquors might have some relation to the subject-matter of a prosecution for the illegal sale thereof. Through no artifice, however contrived, can bootlegging be projected into the crime of hog stealing. * * * There is no relation whatever between crimes against the liquor law and the crime for which defendant was being tried. * * * The evidence is wholly circumstantial, and while sufficient to take the case to a jury, it should be without the poisonous influence of entirely immaterial and incompetent testimony. The people of this state have voted the legitimate traffic in intoxicating liquors out of existence because of the baneful effect of the saloon. There was a strong sentiment against licensed saloons which is more pronounced against the bootlegger. It would be difficult to secure a jury of twelve men anywhere in the state, some of whose minds would not revolt against a convicted bootlegger. If, as in this case, both the defendant and his wife appear to be bootleggers, the tendency is to at once denounce them as mere trash. It would amount to almost certain impeachment of

both as witnesses in a manner contrary to law, which defines with absolute certainty the proper method of impeaching witnesses."

It is quite apparent why the statute here being discussed would not apply when the facts of the case are analyzed.

The case of Fetty v. State, 119 Neb. 619, 230 N. W. 440, is cited in the instant case as to why section 10186, Comp. St. 1922, now section 29-2308, R. S. 1943, was inapplicable to the cited case and therefore inapplicable to the instant case. The case involved the drunkenness of a juror after the case had proceeded to trial and witnesses had testified. The court determined the assigned errors set out and stated: "The statutes and the decisions of this court definitely set out the course to be pursued by the trial court, when confronted by such an emergency as arose in this case, and we cannot approve a radical departure therefrom." In other words, a court's duty in such an emergency was set forth in other statutes which were well defined as to the course of procedure he should have pursued. Under the circumstances there was no occasion for the application of the section of the statute here involved.

The majority opinion likewise cites a recent case, Glasgow v. State, *ante* p. 279, 22 N. W. 2d 842, with reference to the applicability of the statute here involved to the instant case. This case dealt with misdirection in instructions to the jury. An analysis of the instructions given by the trial court discloses that in instruction No. 1, the court set forth the substance of the information which disclosed that the section under which the charge was made was section 28-945, R. S. 1943. It provided, in substance, that the defendant was charged with setting up and keeping gambling devices or gaming machines. In instruction No. 3 the court set forth a definition under an entirely separate statute, 28-947, R. S. 1943, to the effect, "Whoever keeps or exhibits any gaming table, establishment, device or apparatus, to win or gain money or other property of value, * * *." Instruction No. 4 defines the words "keeps and exhibits" as used

in section 28-947, R. S. 1943. Instruction No. 5 defines a "device" as used in section 28-947, R. S. 1943. Instruction No. 7 defines the elements that it was necessary for the State to prove beyond a reasonable doubt before the defendant could be convicted. The elements are those of the offense as set forth in section 28-947, R. S. 1943.

It will be observed by a careful analysis of the instructions given, and as shown by the transcript in the cited case, that the only one having to do with the offense charged under section 28-945, R. S. 1943, is the instruction that sets forth the information constituting the charge. Instructions numbers 3, 4, 5, and 7 had to do explicitly with section 28-947, R. S. 1943. Obviously, when all of the instructions except the one, as hereinbefore mentioned, point to a separate and distinct charge other than that contained in the information, the statute under discussion is inapplicable, and the case is not in point with the situation as appears in the instant case.

In the instant case the evidence is overwhelming that the defendant performed an illegal operation upon a pregnant girl and, as a result thereof, destroyed the foetus.

I believe it can be taken for granted that the men and women who composed the jury in this case possessed ordinary and reasonable intelligence. It seems inconceivable that the jurors were misled, as set forth in the majority opinion, and that the substantial rights of the defendant were prejudiced. The jury must have considered the instructions as a whole, as required by law, in arriving at their verdict.

A careful examination of the entire cause has been made by me, and I say with conviction, there is no prejudicial error or miscarriage of justice in the proceedings and sentence. Under the evidence, a verdict of not guilty would have been a travesty on justice and a reproach to the law. It is in cases such as the instant case that the statute applies, and gives this court cause to examine the entire record.