WALLACE E. WHITEHEAD, APPELLANT, V. STATE OF
NEBRASKA, APPELLEE.

25 N. W. 2d 45

FILED NOVEMBER 29, 1946. No. 32077.

*Francis M. Casey*, for plaintiff in error.

*Walter R. Johnson, Attorney General*, and *Erwin A. Jones*, for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

WENKE, J.

Plaintiff in error, Wallace E. Whitehead, was convicted in the district court for Douglas County of the crime of foeticide and sentenced to serve a period of two years in the penitentiary at hard labor. From that conviction and sentence, after motion for new trial had been overruled, he prosecutes error proceedings to this court.

For convenience the plaintiff in error, Wallace E. Whitehead, will be referred to as the defendant.

Some of the errors herein complained of are: That section 28-404, R. S. 1943, is unconstitutional; that the information is not sufficient either in fact or law; and that the evidence of an accomplice must be corroborated. These errors have all been sufficiently and correctly answered contrary to the defendant's contentions in the case of Hans v. State, *ante* p. 67, 22 N. W. 2d 385.

While we granted a rehearing in Hans v. State, *supra,* reversed our affirmance thereof, and granted a new trial (See Hans v. State, *ante* p. 730, 25 N. W. 2d 35), it was solely on the question of the sufficiency of the instructions. All other questions therein decided were reaffirmed by our refusal to grant a rehearing thereon.

Information was filed and defendant was convicted under section 28-404, R. S. 1943, and sentenced to a period of two years in the penitentiary at hard labor.

Section 28-404, R. S. 1943, is as follows: "Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or foetus, at any stage of utero gestation, any medicine, drug, or substance whatever, or who shall use or employ, or devise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or foetus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall, *in case of the death of such vitalized embryo, or foetus,* or mother, *in consequence thereof,* be imprisoned in the penitentiary not less than one nor more than ten years." (Italics ours.)

The court by instructions No. 2 and No. 4 instructed the jury as follows:

"The Information charges and alleges in substance that on or about the 10th day of June, 1945, Wallace E. Whitehead, alias Wallace Wilson, in the County of Douglas, State of Nebraska, then and there being, in and upon one Phyllis Hutchison, then and there being, she the said Phyllis Hutchison, then and there being pregnant with a vitalized embryo or foetus, did unlawfully, wilfully and maliciously make an assault, and that the said Wallace E. Whitehead, alias Wallace Wilson, unlawfully and feloniously did use and employ in and upon the body and womb of the said Phyllis Hutchison, the mother of said vitalized embryo or foetus, certain instruments and other means, the nature and kind

of said instruments and other means being to affiant unknown, with the intent then and there unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus, the same not being necessary to preserve the life of the said Phyllis Hutchison, the mother, and not having been advised by two physicians to be necessary for that purpose, and thereby inflicted on the womb and other internal parts of the said Phyllis Hutchison, and on said vitalized embryo or foetus, certain wounds and bruises, of which said wounds and bruises, did thereafter on or about the 10th day of June, 1945, die and was thereafter removed and taken from the womb of the said Phyllis Hutchison, on or about the 10th day of June, 1945, in said county, and state, and that the said Wallace E. Whitehead, alias Wallace Wilson, the vitalized embryo or foetus aforesaid, unlawfully, feloniously, and purposely did kill and slay, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Nebraska."

"The Statute of the State of Nebraska upon which this prosecution is based, provides: 'Any physician or other person who shall administer or advise to be administered, to any pregnant woman with a vitalized embryo, or foetus, at any stage of uterogestation, any medicine, drug or substance whatever, or who shall use or employ or devise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or foetus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case of death of such vitalized embryo, or foetus, or mother, in consequence thereof', be punished as provided by law."

In the first paragraph of instruction No. 3 the court instructed the jury as follows: "The defendant has been arraigned on said information and has pleaded not guilty. The plea of not guilty by the defendant casts upon the State of Nebraska the burden of establishing every ma-

terial allegation in the information beyond a reasonable doubt."

Instruction No. 7 given by the court is as follows:

"The material allegations and elements necessary to be established by the evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in the Information, are:

"1. That at and immediately before the alleged commission of the unlawful act charged against the defendant herein, the said Phyllis Hutchison was pregnant with a vitalized embryo or foetus.

"2. That while said Phyllis Hutchison was pregnant as aforesaid, the defendant, Wallace E. Whitehead, alias Wallace Wilson, unlawfully and feloniously used and employed in and upon the body and womb of said Phyllis Hutchison a certain instrument or instruments, or other means of any kind or character whatsoever, with the intent unlawfully and feloniously to kill and destroy the said vitalized embryo or foetus.

"3. That said act or operation was not necessary to preserve the life of said Phyllis Hutchison, nor was it advised by as many as two physicians to be necessary for that purpose.

"4. That said act or operation was done by defendant on or about the 10th day of June, 1945.

"5. That said act or operation occurred within the County of Douglas and State of Nebraska.

"If you find from the evidence beyond a reasonable doubt that the State has established each and all of the foregoing propositions, then it will be your duty to find the defendant guilty of the crime charged in the Information. Otherwise, you will find him not guilty."

It will be noted that this instruction is a complete statement by the court of what elements constitute the crime and that the jury's determination of the guilt or innocence of the plaintiff in error was to be determined thereby.

It is evident that the trial court, by means of instruction No. 7, endeavored to specifically set forth the essential elements of the crime of which the plaintiff in error was charged but omitted therefrom the essential element which has previously been italicized, namely, "the death of such vitalized embryo, or foetus."

In addition to the above the court gave instruction No. 8 as to the element of intent, which reads as follows:

"Intent is an essential element in this case and must be established by the evidence the same as any other material element, beyond a reasonable doubt, but you are likewise instructed that every sane person is presumed to intend the natural and probable consequences of his voluntary act.

"Therefore, should you believe from the evidence beyond a reasonable doubt that the defendant used or employed an instrument or instruments or other means of any character whatsoever in and upon the body and womb of Phyllis Hutchison, while pregnant with a vitalized embryo or foetus, as charged in said information, and that the natural and probable consequence of such use or employment of said instrument or instruments or other means would be the destruction of said vitalized embryo or foetus, then the presumption would be that the defendant intended the destruction of said vitalized embryo or foetus; and should you further believe from the evidence beyond a reasonable doubt that the said vitalized embryo or foetus was destroyed as a direct consequence thereof, then the defendant would be liable therefor and you should so find on those propositions."

It is, of course, true that "All instructions given should be considered in determining whether a particular instruction is prejudicial." Foreman v. State, 126 Neb. 619, 253 N. W. 898.

However, "It is the duty of the court to instruct the jury on the law of the case, whether requested to do so or not, and if the instructions, by the omission of certain elements, have the effect of withdrawing from the considera-

tion of the jury an essential issue or element of the case, it is error." Glasgow v. State, *ante* p. 279, 22 N. W. 2d 842.

As stated in Goldsberry v. State, 66 Neb. 312, 92 N. W. 906: "It is error for the court to instruct the jury that they may convict the defendant without finding a specific fact which constitutes one of the essential ingredients of the offense charged."

As stated in Thompson v. State, 61 Neb. 210, 85 N. W. 62: "The seventh paragraph of the court's charge is a defective definition of murder in the second degree. The attorney general does not defend the instruction, but contends that it furnishes no ground for reversal, because the elements of the crime were correctly stated in another instruction. This question is not a new one. It has been frequently decided by this court, and the rule is a just one and founded in good sense, that the jury should not be required to choose between conflicting instructions. First Nat. Bank v. Lowrey, 36 Nebr., 290; Carson v. Stevens, 40 Nebr., 112; Richardson v. Halstead, 44 Nebr., 606; Barr v. State, 45 Nebr., 458; Metz v. State, 46 Nebr., 547."

"An instruction purporting in itself to be complete and to authorize either a conviction or acquittal, as the jury may find the facts therein stated, and which omits all reference to an element of the offense essential to a conviction, or to any other instruction covering such element, is erroneous." Altis v. State, 107 Neb. 540, 186 N. W. 524. See, also, Higbee v. State, 74 Neb. 331, 104 N. W. 748; Bode v. State, 80 Neb. 74, 113 N. W. 996; and Bailey v. State, 115 Neb. 77, 211 N. W. 200.

While there are cases from which it appears a contrary rule might be inferred, however, insofar as any language used therein is in conflict with the foregoing, the same does not correctly state the law.

Defendant questions the sufficiency of the evidence to sustain his conviction. Under the proper rules applicable thereto, as announced in Hans v. State, *ante* p. 67, 22 N. W. 2d 385, we find the evidence sufficient. Since, under our

holding herein, the case must go back for retrial no useful purpose would be served by setting forth such evidence.

In this respect we have not overlooked section 29-2308, R. S. 1943, and our holdings thereunder. However, it is still the duty of a jury to determine the guilt or innocence of a person charged with a statutory crime and if any of the essential elements of the crime are omitted therefrom, thereby having the effect of withdrawing those issues from the jury, it should be reversed for retrial for we should not and cannot substitute ourselves for the jury in determining whether or not such elements have been established beyond a reasonable doubt. See Glasgow v. State, *supra*.

As stated in Kleinschmidt v. State, 116 Neb. 577, 218 N. W. 384:

"This section has no application where the province of the jury will necessarily have to be invaded, or, stated in another way which is more acceptable to some of the court, where the province of the jury is prejudicially invaded.

"Article I, sec. XI, of the Nebraska Constitution, provides that, in all criminal prosecutions, the accused shall have the right to a fair trial by a jury. A jury consists of twelve qualified persons aided by a judge learned in the law to give directions and guidance to the trial. The judge determines for the jury what evidence it may consider and what law governs the same. When the judge admits evidence, he invites the jury to consider the same; and when he tells the jury what the law is, the jury are bound to accept it as final. The admission of immaterial evidence of a harmless nature may be of no consequence. An instruction that is technically faulty, but which clearly does not mislead the jury, will not ordinarily prejudice the accused. Misconduct of the prosecutor, tending to prevent a fair trial, may be overcome by timely denunciation by the court. The subsequent striking of prejudicial testimony, accompanied with adequate directions by the court telling the jury not to consider it, may well be said to prevent a miscarriage of justice and a substantial wrong. Other in-

stances, affording ample room for the application of the section, might be stated. That section does not mean that this court is to make itself a tryer of fact, contrary to the Constitution preserving trial by jury."

And in Fetty v. State, 119 Neb. 619, 230 N. W. 440: "The state would have us apply it to this case by having this court determine from the record that the defendant was guilty, and that therefore defendant has not been prejudiced because no other verdict could have been returned. The guilt or innocence of the defendant is not to be determined *de novo* in this court, but is one for a jury, drawn, summoned, and impaneled as provided by law."

For a full discussion of the applicability of section 29-2308, R. S. 1943, see Scott v. State, 121 Neb. 232, 236 N. W. 608, wherein this court stated: "Such discretion must be exercised, however, in such a way as to do the prisoner no substantial wrong or to occasion no miscarriage of justice, as no greater wrong can be done a prisoner than to deprive him of the privilege of a trial by a jury of his peers on a question of fact material to the actual issue to be determined, and to substitute therefor the decision of the judges who have not heard the evidence and who have never seen the prisoner. The fact must not be overlooked that it is the free, unbiased verdict of the jury that the accused is entitled to have. * * * One of these safeguards was that a fair determination of the facts involved in a criminal prosecution adversely to the accused, by a constitutional jury, was a prerequisite to the infliction of punishment."

Likewise, it would serve no useful purpose to determine the effect of the conduct of the prosecuting attorney both in his presentation of the evidence and in his argument to the jury for neither may reoccur on retrial.

For the reasons stated, the judgment of conviction is reversed and the cause is remanded for retrial.

REVERSED AND REMANDED FOR RETRIAL.

WENKE, J., participating on briefs.

MESSMORE, J., dissents.